No. 24-2927

**IN THE**
**UNITED STATES COURT OF APPEALS**
**FOR THE SEVENTH CIRCUIT**

REPORTERS COMMITTEE FOR FREEDOM OF THE
PRESS, *et al.*,

*Plaintiffs–Appellees,*

v.

TODD ROKITA, RYAN MEARS *and* KERRY FORESTAL,
*in their official capacities,*

*Defendants–Appellants,*

On Appeal from the United States District Court for the
Southern District of Indiana, Case No. 1:23-cv-1805-JRS-MG,
The Honorable James R. Sweeney, II, Judge

**OPENING BRIEF FOR DEFENDANTS-APPELLANTS**

JOHN P. LOWREY
Deputy Chief Litigation Counsel
City of Indianapolis
Office of Corporation Counsel
200 E. Washington Street, Suite 1601
Indianapolis, IN 46204
Telephone: (317) 327-4055
Email: john.lowrey@indy.gov

*Counsel for Defendant-Appellant*
*Kerry Forestal*

THEODORE E. ROKITA
Attorney General of Indiana

JAMES A. BARTA
Solicitor General
JENNA M. LORENCE
Deputy Solicitor General
JOHN M. VASTAG
Deputy Attorney General
Office of the Attorney General
IGC South, Fifth Floor
302 W. Washington Street
Indianapolis, IN 46204
(463) 261-6184
Jenna.Lorence@atg.in.gov

*Counsel for Defendants-Appellants*
*Todd Rokita and Ryan Mears*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................ ii

INTRODUCTION ........................................................................................... 1

JURISDICTIONAL STATEMENT ................................................................. 2

STATEMENT OF ISSUES ............................................................................. 3

STATEMENT OF THE CASE ....................................................................... 3

I.     Laws Providing a Buffer Zone for Police ........................................... 3

II.    Prior Proceedings ................................................................................ 5

      A.    The Northern District of Indiana upholds the Buffer Law against a First Amendment Challenge.................................................. 5

      B.    This Lawsuit ................................................................................ 6

SUMMARY OF ARGUMENT ...................................................................... 10

STANDARD OF REVIEW ............................................................................ 12

ARGUMENT .................................................................................................. 13

I.    Plaintiffs' Alleged Injury Is Not Caused by the Buffer Law, and Will Not Be Redressed by the Injunction in This Case ........................... 13

II.    The Buffer Law Is a Constitutional Exercise of State Authority.................. 15

      A.    The Buffer Law is clear and definite such that an ordinary person can understand whether their conduct is a crime ................................ 18

      B.    The Buffer Law does not invite arbitrary or discriminatory enforcement ............................................................................ 23

CONCLUSION.............................................................................................. 31

# TABLE OF AUTHORITIES

## CASES

*Bell v. Keating,*
  697 F.3d 445 (7th Cir. 2012) ............................................................*passim*

*California v. Texas,*
  593 U.S. 659 (2021) ................................................................ 13

*City of Chicago v. Morales,*
  527 U.S. 41 (1999) ........................................................ 19, 24, 27

*Clapper v. Amnesty Int'l USA,*
  568 U.S. 398 (2013) ................................................................ 13

*Colten v. Kentucky,*
  407 U.S. 104 (1972) ................................................................ 15

*Ctr. for Individual Freedom v. Madigan,*
  697 F.3d 464 (7th Cir. 2012) .................................................... 30

*Davies Warehouse Co. v. Bowles,*
  321 U.S. 144 (1944) ................................................................ 15

*Desetrain v. City of L.A.,*
  754 F.3d 1147 (9th Cir. 2014) .................................................. 27

*Gonzales v. Carhart,*
  550 U.S. 124 (2007) ........................................................ 11, 16, 19

*Grayned v. City of Rockford,*
  408 U.S. 104 (1972) ........................................................ 18, 23, 26

*Horton v. City of St. Augustine,*
  272 F.3d 1318 (11th Cir. 2001) ................................................ 25

*Int'l Union, United Auto., Aerospace & Agric. Implement Workers of
  Am., UAW v. Johnson Controls Inc.,*
  674 F.2d 1195 (7th Cir. 1982) .................................................. 13

*Johnson v. State,*
  202 So.2d 852 (Fla. 1967) ...................................................... 26

*Kolender v. Lawson,*
  461 U.S. 352 (1983) ........................................................ 12, 22, 24, 27

CASES [CONT'D]

*Metro Produce Distribs., Inc. v. City of Minneapolis,*
    473 F.Supp.2d 955 (D. Minn. 2007) ..................................................... 27

*Nicodemus v. City of South Bend,*
    711 F. Supp. 3d 1015 (N.D. Ind. 2024) ......................................... 5, 6, 29

*Papachristou v. City of Jacksonville,*
    405 U.S. 156 (1972) ................................................................... 17, 26

*Planned Parenthood of Ind. & Ky. v. Marion Cnty. Prosecutor,*
    7 F.4th 594 (7th Cir. 2021)........................................................... 15, 19

*Screws v. United States,*
    325 U.S. 91 (1945) ........................................................................... 19

*Sigman v. Town of Chapel Hill,*
    161 F.3d 782 (4th Cir. 1998) ............................................................ 28

*Skilling v. United States,*
    561 U.S. 358 (2010) .................................................................*passim*

*Smooth v. Goguen,*
    415 U.S. 566 (1974) ........................................................................ 22

*Trs. of Ind. Univ. v. Curry,*
    918 F.3d 537 (7th Cir. 2019) ...................................................... 15, 18

*United Air Lines, Inc. v. Air Line Pilots Ass'n, Int'l,*
    563 F.3d 257 (7th Cir. 2009) ............................................................ 12

*United States v. Bronstein,*
    849 F.3d 1101 (D.C. Cir. 2017).......................................................... 25

*United States v. Johnson,*
    875 F.3d 360 (7th Cir. 2017) ............................................. 16, 24, 25, 26

*United States v. Salerno,*
    481 U.S. 739 (1987) ........................................................................ 15

*United States v. Sylla,*
    790 F.3d 772 (7th Cir. 2015) ............................................................ 15

*Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.,*
    455 U.S. 489 (1982) ................................................................... 15, 23

CASES [CONT'D]

*Ward v. Rock Against Racism*,
   491 U.S. 781 (1989) ............................................................. 30

*Winter v. Nat. Res. Def. Council, Inc.*,
   555 U.S. 7 (2008) ................................................................. 12

*Winters v. New York*,
   333 U.S. 507 (1948) ............................................................. 26

STATUTES

18 U.S.C. § 43(a)(2)(C) .......................................................... 25

18 U.S.C. § 43(d)(1)(A) .......................................................... 25

28 U.S.C. § 1292(a)(1) ............................................................. 3

28 U.S.C. § 1331 ..................................................................... 2

28 U.S.C. § 1343 ..................................................................... 2

42 U.S.C. § 1983 ..................................................................... 2

Ind. Code § 35-31.5-2-185 ...................................................... 5

Ind. Code § 35-44.1-2-14 ..............................................*passim*

Ind. Code § 35-44.1-3-2(b)(2)(B) ........................................... 19

Ind. Code § 35-44.1-4-1.5 ...................................................... 14

Ind. Code § 35-44.1-4-2 ......................................................... 14

Ind. Code § 35-44.1-4-5 ............................................... 10, 14, 29

Ind. Code § 35-44.1-4-10 ....................................................... 19

Chi. Mun. Code § 8-4-010(d) ................................................. 20

OTHER AUTHORITIES

Hr'g on H.B. 1186, H. Comm. on Cts. and Crim. Code, 123rd Gen.
   Assemb., 1st Reg. Sess. (Feb. 8, 2023),
   https://iga.in.gov/session/2023/video/committee_courts_and_
   criminal_code_0300/ ............................................................. 4

**OTHER AUTHORITIES [CONT'D]**

Lydia Reuille and Clayton McMahan, *Court Docs: Officer Performed 'Hip Toss,' Man 'Fell to the Ground' in Viral Video*, WANE 15 (Jan. 24, 2023), https://perma.cc/2VZC-RQSU ............................................................. 30

## INTRODUCTION

When law enforcement officers go to work each day, their duties can range from routine record-keeping to addressing life-threatening emergencies. An officer might be called to respond to a report of a mental health crisis, facilitate crowd safety at a large event, or perform a traffic stop. In each of these situations, the officer's goal is to protect public safety. To do so, officers must be able to focus their full attention on the duty in front of them.

Indiana's Buffer Law was created to allow officers the space to complete their duties without distraction, while also keeping the public safe and protecting bystanders' ability to observe—and even record—officers. The law allows officers to tell bystanders not to approach within 25 feet if the officer is engaged in his or her duties. It criminalizes a narrow set of actions: a person may only be charged if, after receiving such an order, he ignores it and knowingly approaches within 25 feet of the officer.

The plaintiffs here have challenged this commonsense law because they claim ordinary people cannot tell what activities are criminalized under it. So, they argue, the law violates the Fourteenth Amendment's due process guarantee on its face. But this is incorrect. The law gives bystanders notice that when an officer is conducting his or her official duties, he or she may order them not to approach within 25 feet. The law's specific, objective terms ensure that it does not invite officers to enforce it in an arbitrary manner. The Buffer Law is therefore permissible under the Fourteenth Amendment.

In any event, the plaintiffs have not even shown that the harms they allege are caused by or will be redressed by an injunction against the Buffer Law. Because the district court lacked jurisdiction to decide this dispute in the first instance, and erred in its decision on the merits, this Court should vacate the preliminary injunction and reverse.

## JURISDICTIONAL STATEMENT

Plaintiffs-Appellees Reporters Committee for Freedom of the Press, Indiana Broadcasters Association, Indiana Professional Chapter of the Society for Professional Journalists, Indianapolis Star, Nexstar Media Inc., Scripps Media, Inc., and Tegna Inc. (collectively "Plaintiffs"), filed this action for injunctive relief under 42 U.S.C. § 1983, alleging that Indiana Code § 35-44-2-14 ("the Buffer Law") violated the First and Fourteenth Amendments to the U.S. Constitution. Dkt. 1. Although Plaintiffs raised federal questions under 28 U.S.C. §§ 1331 and 1343, the district court lacked jurisdiction to grant relief for the reasons below.

On December 1, 2023, Defendants-Appellants (collectively "the State") filed a motion to dismiss the action for lack of standing, avoidance of duplicative litigation, and collateral estoppel. On September 27, 2024, the district court denied the motion to dismiss and entered a preliminary injunction that enjoined the State "from enforcing Indiana Code § 35-44.1-2-14 against any individual, corporation, association, or other entity until this case has been finally resolved." SA3. It further clarified that "[t]hose enjoined may not issue an order to move back to more than twenty-five feet from law enforcement officers unless such order is consistent with

2

another state or federal law, for example, if there is an operative emergency incident zone." *Id.* On October 10, 2024, Plaintiffs filed a motion to convert the preliminary injunction into a permanent injunction. Dkt. 56. The district court had already declined (in February 2024) to consolidate the preliminary injunction hearing with a trial on the merits. *See* Dkt. 40. The district court has not ruled on that motion.

On October 25, 2024, the State filed a timely notice of appeal from the district court's order denying the motion to dismiss and granting the preliminary injunction. This Court has jurisdiction under 28 U.S.C. § 1292(a)(1) because this is an appeal from an order denying a motion to dismiss and granting a preliminary injunction. This is not an appeal from the order of a magistrate judge.

## STATEMENT OF ISSUES

1.     Whether the district court had subject-matter jurisdiction to decide Plaintiffs' claims.

2.     Whether Indiana's Buffer Law defines its criminal offense "with sufficient definiteness that ordinary people can understand what conduct is prohibited."

3.     Whether Indiana's Buffer Law defines its criminal offense in a manner that does not encourage arbitrary and discriminatory enforcement.

## STATEMENT OF THE CASE

### I.     Laws Providing a Buffer Zone for Police

Indiana law enforcement officers are the first responders to crime, tragedy, and danger on a daily basis. Yet they "are finding themselves in difficult situations where their attention is becoming divided amongst those involved in the matter and

those not." Hr'g on H.B. 1186, H. Comm. on Cts. and Crim. Code, 123rd Gen. Assemb., 1st Reg. Sess. (Feb. 8, 2023).[1] Officers "cannot know the intentions of the people encroaching on to the investigation." Dkt. 34-1 (Perrine Decl.) ¶ 5. And "[i]f bystanders are encroaching on a scene, officers must divide their attention between securing the scene and the safety of the bystanders." *Id.* ¶ 6. Officers "need to be able to control access to the scene for their own safety, as well as the safety of the public." *Id.* One example of this is when former Knox County Sheriff Stephen Luce was providing security and "watching the crowd" during an event. Hr'g on H.B. 1186, H. Comm. on Cts. and Crim. Code, 123rd Gen. Assemb., 1st Reg. Sess. (Feb. 8, 2023).[2] But because Mr. Luce could not ask bystanders to remain 25 feet away from him while he was working his detail, someone was able to approach him and, within seconds, hit him hard enough to blow out his eye socket. *Id.*

To protect officers from these types of attacks and free them from distraction so they can effectively conduct their official duties, Indiana passed a "Buffer Law." This law permits an officer to order an individual to remain 25 feet away from an officer "lawfully engaged in the execution of the law enforcement officer's duties." Ind. Code § 35-44.1-2-14. If the officer warns someone to not approach, but he "knowingly and intentionally" ignores this warning and intrudes closer than 25 feet to the officer, that person could be charged with a misdemeanor. *Id.* A "law enforcement officer"

---

[1] Available at https://iga.in.gov/session/2023/video/committee_courts_and_criminal_code_0300/, 1:39:51–57 (testimony of Jordan Buckley).
[2] Available at https://iga.in.gov/session/2023/video/committee_courts_and_criminal_code_0300/, 1:55:00–56:10 (testimony of Stephen Luce, Exec. Dir., Ind. Sheriffs' Ass'n).

includes "a police officer," "correctional officers," "sheriffs," and "tribal police officers" or their "deput[ies]," § 35-31.5-2-185(a)(1)–(a)(2), as well as other officials like "conservation officers" or "an enforcement officer of the alcohol and tobacco commission," § 35-31.5-2-185(a)(4), (a)(5). This allows officers to create a meaningful zone around themselves so they may focus solely on the public-safety tasks before them.

## II.    Prior Proceedings

### A.    The Northern District of Indiana upholds the Buffer Law against a First Amendment Challenge

Before this case was decided, the North District of Indiana found that the Buffer Law was not unconstitutionally overbroad under the First Amendment. *Nicodemus v. City of South Bend*, 711 F. Supp. 3d 1015 (N.D. Ind. 2024), *appeal argued*, No. 24-1099 (7th Cir. Sept. 27, 2024). The court made several key factual findings to support its ruling. It decided that a 25-foot buffer zone does not "substantial[ly] burden" the ability to meaningfully record the police. *Id.* at 1025. "In this day and age of enhanced technology, with zoom lenses that allow individuals to capture activity at hundreds of feet, or parabolic microphones that allow audio recording at distances well in excess of 25 feet," the court found it "strained" to claim that the small buffer zone was a substantial burden on the right to record. The Court noted that 25 feet is equal to the "width of a two-car garage, or the length of a typical garden hose, or just small steps beyond an NBA three-point line." *Id.* In that case, the plaintiff's own videos showed that "he easily capture[d] events much greater than 25 feet, and even the audio of officers speaking at a greater distance." *Id.* at 1026.

And the Buffer Law "never once permits an officer to tell a reporter or citizen-journalist to leave altogether or to cease recording police activity." *Id.* at 1027.

Furthermore, the Court ruled that the State had narrowly drawn the restriction to achieve its substantial interests. The statute "criminalizes a person's knowing encroachment into a zone of integrity that facilitates the performance of an officer's duties, and only then the officer's lawful duties, and only after the officer has advised the person to cease approaching, and only then within 25 feet." *Id.* at 1022. In this way, the court explained, "the law promotes officer and public safety by ensuring that someone at a close distance cannot harm or hinder those charged with and engaged in their lawful duties." *Id.*

**B.    This Lawsuit**

Plaintiffs brought this challenge to the Buffer Law in the Southern District of Indiana. Dkt. 1. Alongside an as-applied and facial First Amendment challenge, the complaint alleged that, on its face, the Buffer Law vested "unbridled discretion" in police officers as to whether to enforce the Buffer Law or not. *Id.* at 19–20. According to the complaint, this was impermissibly vague under the Due Process Clause. *Id.* Plaintiffs sought a preliminary injunction. *Id.* at 20–21.

The State filed a motion to dismiss. Dkt. 25. The motion argued that Plaintiffs had not alleged a credible threat of enforcement. In fact, their work is not affected by the Buffer Law. *See* Dkt. 26 at 4–5. Any potential past instances of enforcement did not reveal any of the arbitrary or discriminatory enforcement that the Plaintiffs

imagined. *Id.* at 6. And much of those fears would be mitigated by local departmental policies that restricted and guided the use of buffer zones. *Id.* at 10–11.

The motion further argued that, because *Nicodemus* was first-filed and ongoing, that case would be sufficient to protect the interests of the media organizations. The first-to-file rule thus counseled dismissing, or at the least staying, the proceedings. *Id.* at 15–16. And given the strong identity between the interests asserted in *Nicodemus* and those of the media organizations, collateral estoppel would bar this later-filed suit. *Id.* at 20–24.

While opposing the motion to dismiss, Plaintiffs moved to consolidate the proceedings on the preliminary injunction with a trial on the merits, Dkt. 39, which the court denied, Dkt. 40. After *Nicodemus* was appealed to this Court, the State moved for a stay of proceedings until this Court could resolve the appeal. Dkt. 41. That too was denied. Dkt. 46.

The district court then granted Plaintiffs' request for a preliminary injunction and denied the State's motion to dismiss. SA4. First, the district court determined that each of the plaintiff media organizations had standing to sue. The media organizations that "employ journalists" alleged a credible threat of enforcement because they had been "engaged in reporting" less than 25 feet from the officers and "put to a choice between committing a crime or forgoing reporting if they are ordered to move back." SA8–SA9. According to the district court, the media organizations planned to continue this close-up reporting even if that meant violating the law, which was enough to create a credible threat of enforcement. SA9. For the Reporters

Committee, even though they did not themselves employ journalists, they had alleged that the Buffer Law forced them to "devote resources to combatting the effects of the law that are harmful." Dkt. 1 (Compl.) ¶ 46. The district court found this to be a sufficient injury to support standing as well because the Reporters Committee "clearly demonstrated new burdens . . . created by the law it is challenging." SA15 (cleaned up). Further, the court rejected the State's collateral estoppel arguments because the facial overbreadth claim in *Nicodemus* "did not overlap with the additional issues brought" in this case. SA16.

On the merits, the court decided that Plaintiffs were likely to succeed on their claim that the Buffer Law was void for vagueness. SA19. Given that it decided to enjoin the law on that claim alone, the court did not address the First Amendment claims. SA19. The court ruled that the Buffer Law was unconstitutionally vague because it did not properly define the offense and would result in arbitrary enforcement. SA20.

First, the district court agreed that "the Buffer Law is clear about what conduct may lead to an arrest." SA20. But it decided that was not sufficiently definite "that ordinary people can understand what conduct is prohibited." SA20. For the district court, the problem was not that people would not know if they were violating the law, but rather that the law "is not specific enough to allow the general public or reporters to know how to conduct themselves to avoid receiving an order to move" in the first place. SA21 (cleaned up).

Second, the court decided that the Buffer Law encouraged "arbitrary and discriminatory enforcement." SA20. The court acknowledged that "law enforcement officers retain the authority to 'exercise some degree of judgment' in the performance of their duties." SA22. But because the law lacked "standards for officers 'to guide them in deciding who should be ordered to move and under what circumstances,'" the court determined that the law was "an unacceptable curtailment of First Amendment rights." SA22 (quoting Pls.' Mem. Supp. Mot. Prelim. Inj., Dkt. 27 at 32). Once again, the Court ruled that without a definition of "the predicate behavior that would prompt any order to move back," the law was void for vagueness. SA23. The court also rejected the argument that local police policy guidance provides adequate guidelines for the statute's enforcement, given that such policies do not apply statewide. SA23. Rather, it concluded that without a universal policy specifying the grounds that could potentially give rise to a violation of the statute anywhere in Indiana, the Buffer Law invites arbitrary or discriminatory enforcement. SA24.

After determining that the Plaintiffs were "likely to succeed on their claim that the Buffer Law is void for vagueness and therefore unconstitutional," SA22, the court also determined that the remaining preliminary injunction factors favored granting relief. It decided that the Plaintiffs' "First Amendment freedoms" were irreparably harmed due to the Buffer Law. SA25–SA26. It also concluded that Indiana's other laws that limit approaching law enforcement officers in certain circumstances meant that enjoining the Buffer Law would not harm the public. SA26–SA28.

9

The district court then enjoined "the parties; their officers, agents, servants, employees, and attorneys; and any other persons who act in concert with the parties or their agents, servants, employees, and attorneys . . . from enforcing Indiana Code § 35-44.1-2-14 against any individual, corporation, association, or other entity until this case has been finally resolved." SA2–SA3. Further, "[t]hose enjoined may not issue an order to move back to more than twenty-five feet from law enforcement officers unless such order is consistent with another state or federal law, for example, if there is an operative emergency incident zone." SA3.

On October 10, 2024, Plaintiffs moved to convert the preliminary injunction into a final judgment and permanent injunction. Dkt. 56. The district court has not ruled on that motion.

On October 25, 2024, the State filed a timely notice of appeal of the preliminary injunction. Doc. 1-1.

## SUMMARY OF ARGUMENT

1.     Plaintiffs lack standing in this case. Standing requires that a plaintiff's alleged injuries be both caused by the challenged action and redressable by a ruling from this Court. If another law would independently cause the plaintiff's injuries, they cannot establish standing. Here, Plaintiffs have alleged that the Buffer Law might keep them from reporting on various events. But another law, Indiana's emergency law, would independently permit officers to require Plaintiffs to leave those scenes. Ind. Code § 35-44.1-4-5. So Plaintiffs' alleged injuries are not caused by

(and therefore, cannot be redressed by enjoining) the Buffer Law, and no jurisdiction to decide this dispute exists.

2.      Even if Plaintiffs did have standing to bring their claim the Buffer Law does not run afoul of the Fourteenth Amendment. The Fourteenth Amendment requires that criminal offenses be defined "(1) with sufficient definiteness that ordinary people can understand what conduct is prohibited and (2) in a manner that does not encourage arbitrary and discriminatory enforcement." *Skilling v. United States*, 561 U.S. 358, 402–03 (2010). The Buffer Law meets both requirements.

First, the district court agreed that the "Buffer Law is clear about what conduct will lead to an arrest." SA20. And Plaintiffs also agree. They state that they regularly record law enforcement officers lawfully engaged in the officer's duties, and regularly do so within 25 feet. Plaintiffs demonstrate that they understand clearly what conduct is prohibited: knowingly approaching within 25 feet of an officer performing his official duties after receiving an order not to do so. The Buffer Law ensures that the public is on notice that they might be violating the law by including a mens rea requirement, which further "alleviate[s] vagueness concerns." *Gonzales v. Carhart*, 550 U.S. 124, 149 (2007).

This Court's decision in *Bell v. Keating*, 697 F.3d 445 (7th Cir. 2012), is not to the contrary. In that case, the statute was triggered by (among other things) persons causing "serious inconvenience, annoyance or alarm." *Id.* at 450. This meant that an ordinary person could only guess whether they were causing sufficient "inconvenience, annoyance or alarm" to trigger a criminal sanction. The Buffer Law,

however, tells a person exactly when it is triggered: when a person knowingly violates a law enforcement officer's order not to approach while he conducts his duties.

Second, the law does not invite arbitrary or discriminatory enforcement because it does not permit officers to arrest and prosecute on a subjective basis. The Fourteenth Amendment protects against laws that give officers "lawmaking" authority. *Kolender v. Lawson*, 461 U.S. 352, 360 (1983). But here, officers may only arrest a person who knowingly violates a 25-foot buffer zone after a do-not-approach order from an officer executing his or her official duties. These objective requirements track with the definite parameters of laws upheld by this Court and others. Further, Indiana's law is nothing like loitering or vagrancy laws which permitted officers to arrest nearly anyone, based only on the officer's subjective motivations. The Buffer Law is not unconstitutionally vague, and the district court's conclusion to the contrary should be reversed.

## STANDARD OF REVIEW

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Id.* at 20. Underlying legal conclusions are reviewed de novo, factual findings for clear error, and the balancing of equities for abuse of discretion. *See United Air Lines, Inc. v. Air Line Pilots Ass'n, Int'l*, 563 F.3d 257, 269 (7th Cir. 2009).

## ARGUMENT

### I.    Plaintiffs' Alleged Injury Is Not Caused by the Buffer Law, and Will Not Be Redressed by the Injunction in This Case

For standing, a plaintiff must prove the alleged injury is "fairly traceable to the challenged action" and "redressable by a favorable ruling." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013). Parties cannot satisfy these requirements if the injury stems from legal provisions not before the court. *California v. Texas*, 593 U.S. 659, 678–80 (2021). So the challenged law must actually cause the plaintiff's injury. And an alleged injury from a statute is not redressable if another statute would "independently" inflict the same alleged injury. *Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am., UAW v. Johnson Controls Inc.*, 674 F.2d 1195, 1199 (7th Cir. 1982), *rev'd on other grounds*, 499 U.S. 187 (1991).

Throughout their complaint and supporting declarations, Plaintiffs have complained that the Buffer Law keeps them 25 feet away from certain newsworthy events like fires, car accidents, and crime scenes. *See, e.g.*, Dkt. 27-1 (Thedwall Decl.) ¶ 4 (interacting with law enforcement "when I am covering crime scenes"); *id.* ¶ 11 (reporting "from the scene of a shooting at a bar involving a law enforcement officer"); Dkt. 27-2 (Hums Decl.) ¶ 4 (covering "police involved shootings" and "crime scenes"); Dkt. 27-3 (Scheer Decl.) ¶ 13 (covering "a shooting that had taken place at a mall"); Dkt. 27-4 (Smith Decl.) ¶ 5 ("If I am covering a fire, for instance, and there are police on scene, I'll be right near them. I need to get that close to get the best quality video I can."); *id.* ¶ 7 (voicing concerns about "bystander-contributed videos" of "fires or

crashes in rural areas"); Dkt. 1 (Compl.) ¶ 34 n.1 (listing stories of officers shot in Mitchell, Indiana and a 1-year-old who was shot and killed).

But another Indiana law not challenged here would allow law enforcement to ask Plaintiffs to stay at least 25 feet away in those circumstances. As the district court noted, SA27, Indiana law independently criminalizes "knowingly or intentionally refus[ing] to leave an emergency incident area immediately after being requested to do so by a firefighter or law enforcement officer." Ind. Code § 35-44.1-4-5. These protectable "emergency incidents" include "a structure or vehicle that is on fire," "a motor vehicle accident," "a crime scene," "a police investigation," and "a location where an individual is being arrested." § 35-44.1-4-1.5. Under the emergency statute, like the Buffer Law, refusal to leave at an officer's request also carries a misdemeanor penalty. § 35-44.1-4-5. So in the circumstances where Plaintiffs are concerned about proximity to officers, another law could cause officers to order bystanders not to approach. And even if enforcement of the Buffer Law is enjoined, law enforcement may still ask Plaintiffs to back away in emergency situations like those they describe. Indeed, under the emergency statute, law enforcement could request that they move back even further than 25 feet. *See* Ind. Code § 35-44.1-4-2 (law enforcement may set off a perimeter "greater" than 25 feet with "flags, barricades, barrier tape, or other markers").

Because Plaintiffs have failed to establish that the Buffer Law has caused their alleged injuries, or that those injuries would be redressed if the Buffer Law were

enjoined, they have not established standing. Therefore, this Court, and the district court, lack subject-matter jurisdiction to decide Plaintiffs' claims.

## II.    The Buffer Law Is a Constitutional Exercise of State Authority

Like all statutes, the Buffer Law comes before the Court with a presumption of constitutionality. *Davies Warehouse Co. v. Bowles*, 321 U.S. 144, 153 (1944). Because Plaintiffs have brought a facial Fourteenth Amendment challenge, Dkt. 1 (Compl.) ¶ 80–86—"the most difficult challenge to mount successfully," *United States v. Salerno*, 481 U.S. 739, 745 (1987)—they must "demonstrate that the law is impermissibly vague in all of its applications." *Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 497 (1982).

Courts have long recognized that laws "general enough to take into account a variety of human conduct" do not inherently pose a "constitutional dilemma." *Colten v. Kentucky*, 407 U.S. 104, 110 (1972). To survive a "disfavored" facial vagueness challenge, *Planned Parenthood of Ind. & Ky. v. Marion Cnty. Prosecutor*, 7 F.4th 594, 603 (7th Cir. 2021), the law need only have a "core of meaning," and questions about "the statutory margin" can be left for future, as-applied challenges, *Trs. of Ind. Univ. v. Curry*, 918 F.3d 537, 541 (7th Cir. 2019). A challenged law has a "core of meaning" when it defines "the criminal offense (1) with sufficient definiteness that ordinary people can understand what conduct is prohibited and (2) in a manner that does not encourage arbitrary and discriminatory enforcement." *Skilling v. United States*, 561 U.S. 358, 402–03 (2010); *see also United States v. Sylla*, 790 F.3d 772, 774 (7th Cir. 2015).

Indiana's Buffer Law clears both requirements. On its face, the law only applies when someone "knowingly or intentionally approaches within twenty-five (25) feet of a law enforcement officer lawfully engaged in the execution of the law enforcement officer's duties," and only after the officer "has ordered the person to stop approaching." Ind. Code § 35-44.1-2-14. The built-in mens rea requirement means that the law only applies if someone knew he was encroaching into the 25-foot zone, further insulating the law from vagueness concerns. *See Gonzales v. Carhart*, 550 U.S. 124, 150 (2007) (scienter requirements "narrow the scope of the Act's prohibition and limit prosecutorial discretion"). The district court conceded that the Buffer Law "is clear about what conduct may lead to an arrest." SA20. Nevertheless, the Court then improperly decided, based on *Bell v. Keating*, 697 F.3d 445 (7th Cir. 2012), that the law must not only specify the conduct that may lead to an arrest, but also the conduct that might prompt the order not to approach, and so did not satisfy *Skilling*'s first prong. SA20–SA21. This interpretation means that laws must not only tell people how to avoid criminal penalties, but also how to avoid instructions from officers at all—a standard found nowhere in the Fourteenth Amendment.

The Buffer Law fulfills the second prong of *Skilling* as well. It does not give officers the authority "to arrest and prosecute on an ad hoc and subjective basis," *Bell*, 697 F.3d at 462, because its elements are "discernable and specific," *United States v. Johnson*, 875 F.3d 360, 371 (7th Cir. 2017). It does not avoid definiteness "so as to allow the net to be cast at large, to enable men to be caught who are vaguely undesirable in the eyes of the police and prosecution, although not chargeable with

16

any particular offense." *Id.* (quoting *Papachristou v. City of Jacksonville*, 405 U.S. 156, 166 (1972)). Rather, it clearly delineates what conduct is unlawful—knowingly approaching within 25 feet once warned not to do so. Once again, the district court erred in reading *Bell* to require not only clear notice of when a person violates the statute by not following an officer's order, but also notice of "specific behavior that may prompt that order." SA23.

The district court largely relied on *Bell* in enjoining the law. SA20–SA23. But it read that case too broadly to sweep in the Buffer Law's clear directives. In *Bell*, an ordinance criminalized failure to obey an officer's order to disperse if "three or more individuals are engaging in disorderly conduct nearby." *Bell,* 697 F.3d at 449. The law defined "disorderly conduct" as "acts which are likely to cause substantial harm or serious inconvenience, annoyance or alarm." *Id.* at 450. Because this definition of "disorderly conduct" triggered criminal liability, the Court analyzed it under the *Skilling* test. It determined that while "substantial harm" was clear, "inconvenience, annoyance, or alarm" were "inscrutable" to the average person without "further explanation or refinement." *Id.* at 462. Indiana's law has no such issue, because the elements that trigger criminal liability are (1) an order from an officer (2) not to approach within 25 feet (3) when he is conducting his duties. Ind. Code § 35-44.1-2-14. Plaintiffs have never disputed that any of these triggers are vague—because they are not. The Buffer Law is consistent with the Fourteenth Amendment under *Bell*.

### A.     The Buffer Law is clear and definite such that an ordinary person can understand whether their conduct is a crime

Due process "requires criminal statutes to have a core of understandable meaning." *Trs. of Ind. Univ.*, 918 F.3d at 540. Some degree of uncertainty "does not condemn a statute." *Id.* Nor are States prohibited from drawing their criminal provisions with "flexibility and reasonable breadth, rather than meticulous specificity." *Grayned v. City of Rockford*, 408 U.S. 104, 110 (1972). Instead, laws need only define an offense "with sufficient definiteness that ordinary people can understand what conduct is prohibited." *Bell*, 697 F.3d at 461 (quoting *Skilling*, 561 U.S. at 402–03). And mere "uncertainty at the margins" is not enough to make a law vague; rather, it must create "uncertainty so pervasive that most of a law's potential applications are impossible to evaluate." *Trs. of Ind. Univ.*, 918 F.3d at 540.

When the district court concluded that "[t]he Buffer Law is clear about what conduct will lead to an arrest: refusing to obey an officer after being told to move when one is within twenty-five feet," SA20, that should have ended the inquiry under the "sufficient definiteness" prong of the vagueness test. It is "[]possible to evaluate," *Trs. of Ind. Univ.*, 918 F.3d at 540, most, if not all, of the law's potential applications. Plaintiffs have never argued that they are confused about what it means to "approach" an officer, whether 25 feet is a definite measurement, or what an "order" from an officer might mean. *See* Ind. Code § 35-44.1-2-14. To the contrary, Plaintiffs have demonstrated that they understand what these terms mean, because they assert that they regularly record officers "lawfully engaged in the law enforcement officer's duties," *see, e.g.*, Pls.' Mem. Supp. Prelim. Inj. at 4, 5, and regularly do so "well within

25 feet," Dkt. 27-4 (Smith Decl.) ¶ 5; *see also* Dkt. 27-3 (Scheer Decl.) ¶ 6, Ex. A (photos taken "within 25 feet of law enforcement officers"). It makes sense that these terms are clear because the language in the Buffer Law is similar to that in other Indiana laws prohibiting conduct relating to officers engaged in their duties. *See, e.g.*, Ind. Code § 35-44.1-3-2(b)(2)(B) (criminalizing disarming an officer who is "engaged in the performance of the officer's official duties"); § 35-44.1-4-10 (criminalizing impeding public safety with aerial vehicles while officers are "performing or attempting to perform the individual's official duties").

The law includes the additional backstop of a mens rea requirement, ensuring that no one is placed "on trial for an offense . . . the nature of which the statute does not define and hence of which it gives no warning." *Planned Parenthood*, 7 F.4th at 602 (quoting *Screws v. United States*, 325 U.S. 91, 101–02 (1945)). The Buffer Law only applies to someone who "knowingly or intentionally" violates an officer's order. Ind. Code § 35-44.1-2-14. That means it cannot trap "those who act in good faith," *see Gonzales*, 550 U.S. at 149–50, even if there is some confusion in a given circumstance. This "scienter requirement[] alleviate[s] vagueness concerns," because if a person is not sure where a 25-foot marker is, he cannot be arrested for violating the law unless he *knowingly or intentionally* crossed that boundary. *Id.* at 150; *see also City of Chicago v. Morales*, 527 U.S. 41, 55 (1999) (plurality opinion) (noting law was unconstitutional in part because it "contain[ed] no mens rea requirement").

The district court, however, misinterpreted *Bell v. Keating*, 697 F.3d 445 (7th Cir. 2012). It decided that *Bell*'s holding barred laws like Indiana's. SA20–SA23. *Bell*

19

did not create a new void-for-vagueness rule, but simply applied *Skilling*'s two-part test. *Id.* at 462. In *Bell*, the statute criminalized failure "to obey a lawful order of dispersal" when "three or more persons are committing acts of disorderly conduct," and those acts "are likely to cause substantial harm or serious inconvenience, annoyance, or alarm." *Id.* at 450 (citing Chi. Mun. Code § 8-4-010(d)). The issue in *Bell* was that a dispersal order was triggered only if people were committing certain acts. *Id.* at 462. But without "explanation or refinement," the terms "serious inconvenience, annoyance, or alarm" did not "identify what nuisances amount to such inconvenience." *Id.* In other words, these terms "predicate[d] penalty on an inscrutable standard, which is no standard at all." *Id.* Because "reasonable people may disagree about what actions" fall into these categories, this meant that "individuals who wish to comply with [the statute] lack notice about what . . . conduct may legitimately invite a dispersal order." *Id.*

The district court here imported that language to create the additional constitutional requirement that laws must "make[] clear that conduct which *does* give rise to a lawful dispersal order." SA21 (quoting *Bell*, 697 F.3d at 461). But that takes a holding specific to the structure of the ordinance in *Bell* and applies it across the board. *Bell* does not require notice sufficient to "avoid receiving an order to move," SA21—only notice sufficient to avoid a criminal penalty. *See* 697 F.3d at 461 (reiterating *Skilling*'s requirement that conduct violating of the law must be spelled out with "sufficient definiteness"). Because the court in *Bell* determined that the statute was triggered by vague language, the law was unconstitutional. *Id.* But the

district court here found that the Buffer Law is triggered by "clear" conduct: "refusing to obey an officer after being told to move when one is within twenty-five feet." SA20. This law is not like the ordinance in *Bell*.

The constitutional issue with *Bell*'s ordinance was that its description of conduct causing "serious inconvenience, annoyance, or alarm" could be subject to differing interpretations. So if someone did not want to be subject to criminal sanctions under a dispersal order, they could not know what actions (causing "serious inconvenience, annoyance or alarm") that they or their companions should avoid. And even in *Bell*, the court recognized that one of the triggers in the law *was* sufficiently definite to survive a vagueness challenge. 697 F.3d at 461–62. When the ordinance was triggered by a threat of "substantial harm," it was constitutional because "an individual can understand" that "substantial harm" refers to "destruction of property or physical injury." *Id.* Like this part of *Bell*'s ordinance, Indiana's law has a specific, objective trigger: when an officer is conducting his official duties, he may order a person not to approach nearer than 25 feet. Ind. Code § 35-44.1-2-14. Unlike the plaintiffs in *Bell,* individuals who "wish to comply" with Indiana's law have full notice about what "conduct may legitimately invite a [do-not-approach] order." 697 F.3d at 462. A "do not approach" order is legitimate under the Buffer Law whenever an officer is conducting his or her official duties. Ind. Code § 35-44.1-2-14.

The problem with the district court's interpretation of *Bell* is that it expands the void-for-vagueness doctrine beyond "fair notice" of "what conduct is prohibited" to a requirement to avoid ever receiving instructions from a law enforcement officer.

*Accord Skilling*, 561 U.S. at 412; *Kolender v. Lawson*, 461 U.S. 352, 357 (1983). The Supreme Court has emphasized that "the more important aspect of vagueness doctrine 'is not actual notice, but the other principal element of the doctrine—the requirement that a legislature establish minimal guidelines to govern law enforcement.'" *Kolender*, 461 U.S. at 358 (citing *Smooth v. Goguen*, 415 U.S. 566, 574 (1974)). Indiana's law sets those minimum standards. Law enforcement may only issue a do-not-approach order while conducting their official duties. They may establish a buffer no greater than 25 feet. And the law does not permit charging someone who unwittingly approaches within 25 feet of an officer.

Even if the district court were correct (that the Fourteenth Amendment required not only notice of the conduct that would cause a criminal sanction but also notice of how "to avoid receiving an order to move," SA21), the Buffer Law is clear there as well. If a person's goal is to avoid receiving an order not to approach—which, to be clear, is not the conduct that the Buffer Law criminalizes—he may stay 25 feet away from any police officer engaged in official conduct, even if no do-not-approach order has issued. Regardless of whether there are other constitutional infirmities with the Buffer Law (and there are not), it is not vague. Knowingly or intentionally approaching within 25 feet of an officer after receiving an order not to approach is the only conduct that gives rise to criminal sanctions.

As always, if individual situations arise where there is confusion about whether the officer was engaged in his official duties, whether he actually gave an order to a bystander, or whether the bystander knowingly or intentionally

22

approached within 25 feet, Plaintiffs may bring as-applied challenges. But the ability to conjure up a situation where the law *might* be vague does not mean that the law is "impermissibly vague in all of its applications"—a requirement for any successful facial challenge. *See Vill. of Hoffman Ests.*, 455 U.S. at 497. On its face, the Buffer Law provides a clear notice of proscribed conduct "with sufficient definiteness that ordinary people can understand what conduct is prohibited." *Skilling*, 561 U.S. at 402. An order not to approach carries the force of law when an officer is "lawfully engaged in the execution of the law enforcement officer's duties." Ind. Code § 35-44.1-2-14. To comply with that order, and thus avoid criminal liability under the Buffer Law, a person must stay back a specific distance—25 feet—and not knowingly or intentionally approach closer than that distance. *Id.*

## B. The Buffer Law does not invite arbitrary or discriminatory enforcement

The Constitution permits statutes to "require[] law enforcement to exercise some degree of judgment." *Bell*, 697 F.3d at 462. So a statute is only impermissibly vague under the second prong of the *Skilling* test if it "delegates to law enforcement the authority to arrest and prosecute on 'an ad hoc and subjective basis.'" *Id.* at 462 (quoting *Grayned*, 408 U.S. at 108). Indiana's Buffer Law does not give law enforcement the ability to carry out "arbitrary and erratic arrests," *id.*, because it only permits arrests in a narrow set of circumstances.

The only conduct proscribed by the law is approaching within 25 feet of an officer conducting his official duties after being warned not to approach—all objective standards set by the statute. Ind. Code § 35-44.1-2-14. If a person approaches within

25 feet of an officer conducting his official duties after an order not to, he has violated the statute. Under the Buffer Law, the officer has no discretion to arrest someone for behavior other than "approaching," or to disregard the mens rea requirement, or to set a perimeter larger than 25 feet. So unlike laws that courts have decided are impermissibly vague, the meaning of the Buffer Law is not decided by the police officer in the moment. *See City of Chicago*, 527 U.S. at 59–60 (plurality opinion). Under the Buffer Law, the officer is not "lawmaking" via "moment-to-moment judgment . . . on his beat" because the law does not vest "discretion in the hands of the police to determine whether the suspect" has violated a statute. *See id.* at 60 (citing *Kolender*, 461 U.S. at 360).

The Buffer Law is similar in this way to the part of the statute in *Bell* that the Court decided did pass constitutional muster: allowing officers to order dispersal when facing "a likelihood of substantial harm." 697 F.3d at 463. This section of the law "limit[ed]" police authority "to situations in which imminent property damage or violence prove readily apparent." *Id.* So in that situation, the law did not "facially encourage standardless decision-making and enforcement at odds with due process." *Id.* In short, laws that permit an officer to respond in many different circumstances (such as whenever an officer is conducting his official duties or whenever "substantial harm" is likely) do not run afoul of the Due Process Clause, so long as their elements are "discernable and specific." *United States v. Johnson*, 875 F.3d 360, 370–71 (7th Cir. 2017). Only those that permit officers to enforce those laws arbitrarily violate due process.

24

Indiana's law is like other statutes that courts have decided do not violate this "arbitrary enforcement" standard. As noted, the section of the ordinance in *Bell* that did not "facially encourage standardless decision-making and enforcement" is one such provision. 697 F.3d at 463. This Court examined another such statute in *Johnson*. 875 F.3d at 363. Two animal rights activists were arrested after vandalizing a mink breeding farm. *Id.* at 364. The defendants released approximately 2000 minks from their cages and destroyed other farm property, causing hundreds of thousands of dollars in damage. *Id.* They were charged under the Animal Enterprise Terrorism Act, which criminalized traveling in interstate commerce "for the purpose of damaging and interfering with the operations of an animal enterprise." *Id.* (citing 18 U.S.C. § 43(a)(2)(C)). The definition of "animal enterprise" covered a "commercial or academic enterprise that uses or sells animals or animal products." *Id.* at 370 (citing 18 U.S.C. § 43(d)(1)(A)). While this Court recognized that this definition was broad and covered many different types of actions, the definition did not invite arbitrary enforcement because "the elements of the law are discernable and specific." *Id.* at 371; *see also Horton v. City of St. Augustine*, 272 F.3d 1318, 1330 (11th Cir. 2001) ("For purposes of a facial challenge, the [statute] enables the ordinary citizen to conform his or her conduct to the law."); *United States v. Bronstein*, 849 F.3d 1101, 1110 (D.C. Cir. 2017) (statute triggered by "*making* a speech or *uttering* language" sufficiently explained what "harangu[ing]" and "oration" were prohibited in the Supreme Court).

The Buffer Law is much the same as the constitutional laws above. While the law covers many different circumstances in which an officer might be engaged in

official duties, the elements of the law are objective and discernable. An ordinary citizen may conform his or her conduct to the law by obeying any "do not approach within 25 feet" orders from officers performing their official duties. Even if these terms are "marked by flexibility and reasonable breadth," they create a clear delineation of "what the ordinance as a whole prohibits." *Grayned,* 408 U.S. at 110.

And while Indiana's law is similar to laws that survive vagueness challenges, it is also a far cry from the type of laws courts invalidate under this provision. For example, in *Papachristou*, the Supreme Court criticized vagrancy laws which "allow the net to be cast at large, to enable men to be caught who are vaguely undesirable in the eyes of police and prosecution, although not clearly chargeable with any particular offense." 405 U.S. at 166 (quoting *Winters v. New York*, 333 U.S. 507, 540 (1948) (Frankfurter, J., dissenting)). The challenged statute prohibited activities like "strolling around from place to place without any lawful purpose or object" or "habitual loaf[ing]." *Johnson v. State*, 202 So.2d 852, 853 (Fla. 1967) (Ervin, J., agreeing in part and dissenting in part). The Court held this law violated due process because nearly anyone could be arrested under the ordinance, even for taking a walk. *Papachristou*, 405 U.S. at 164 (citing Walt Whitman, Vachel Lindsay, and Henry David Thoreau for examples of the American tradition of "wandering or strolling").

Or, as this Court detailed in *Johnson*, laws banning using a vehicle "'as living quarters either overnight, day-by-day, *or otherwise*'" or prohibiting "'idling'" for an indeterminate time, covered "such a large amount of innocent conduct" that they gave the police "unfettered discretion" for whom to cite. 875 F.3d at 371 (first quoting

*Desetrain v. City of L.A.*, 754 F.3d 1147, 1149 (9th Cir. 2014) (emphasis added); then quoting *Metro Produce Distribs., Inc. v. City of Minneapolis*, 473 F. Supp. 2d 955, 961 (D. Minn. 2007)). And in *City of Chicago*, 527 U.S. at 46–47 (plurality opinion), a law allowing officers to self-define "loitering" created an impermissible, inherently subjective standard, because it "necessarily entrust[ed] lawmaking to the moment-to-moment judgment of the policeman on his beat," *id.* at 60 (citing *Kolender*, 461 U.S. at 360). *Bell* addressed a similar concern: requiring dispersal because of "serious inconvenience, annoyance, or alarm" meant that officers effectively wrote the law themselves each time they applied it. 697 F.3d at 463. But no such issue exists here. As explained above, if an officer is engaged in his official duties, the Buffer Law gives him authority to issue an order not to approach within 25 feet. He does not get to decide that he may also issue the order when he is not conducting his official duties, nor does he get to decide the maximum distance of the perimeter he may enforce around himself.

Like its reading of *Bell* for the "notice" requirement, however, the district court imposed a double non-discretion requirement on officers. SA22. Not only did it read *Bell* to require that the law avoid permitting "arrest and prosecut[ion] on 'an ad hoc and subjective basis,'" *id.* (quoting *Bell*, 697 F.3d at 462), but it must also provide a standard for "who should be ordered to move and under what circumstances," *id.* (quoting Pls.' Mem. Supp. Mot. Prelim. Inj., Dkt. 27 at 32). Even if that is what the Fourteenth Amendment required—and not just Plaintiffs' description of what they wish it required—Indiana's Buffer Law meets that standard. The law permits officers

27

to issue a do-not-approach order to bystanders only when conducting their official duties. The result is that their attention is not divided between the task at hand and bystanders. Only under these circumstances may they tell others not to approach within 25 feet. Ind. Code § 35-44.1-2-14.

The district court suggested that an amendment requiring an officer to believe that the bystander "intends to interfere with the execution of the officer's duties" would cure this concern. SA22. But this double layer of mens rea language is not a constitutional due process requirement. As explained above, no criminal penalty attaches when the officer tells someone to not approach—it is not a crime to be within 25 feet of an officer. However, when an officer is engaged in her official duties, she needs to be able to focus on those responsibilities. And even a person approaching with completely innocent intentions can disrupt this focus. Someone approaching nearer than 25 feet requires officers to divert their attention to evaluate whether the person might intend harm to the officer or to others nearby, or whether the approach might put the bystander's own safety at risk. *See* Dkt. 34-1 (Perrine Decl.) ¶ 6 ("If bystanders are encroaching on a scene, officers must divide their attention between securing the scene and the safety of the bystanders, which increases the risks to officer safety."); *id.* at ¶ 5 ("Officers cannot know the intentions of the people encroaching on to the investigation. They could be present for the purposes of victim or witness intimidation, destruction of evidence, or the commission of other crimes."); *see also Sigman v. Town of Chapel Hill*, 161 F.3d 782, 785 (4th Cir. 1998) (noting policy "based on studies which have shown that an armed individual within twenty-

one feet of an officer still has time to get to the officer" before he can effectively react). And even if the person does not intend harm, the officers engaged in their duties are responsible for the public safety. So any do-not-approach order allows officers to focus on their official duties instead of diverting their attention to maintain the safety of the bystanders surrounding them in close proximity. It is common sense that officers must sometimes remove the public from an area for the safety of the public, the officers, and victims—as evidenced by Indiana's emergency law, Ind. Code § 35-44.1-4-5, which Plaintiffs have no quarrel with.

The district court also was concerned that officers might order people to "move back simply because the officer does not want to be recorded." SA22. To begin with, the Buffer Law gives officers no authority to order someone to stop recording, nor does the statute give officers any authority to arrest someone merely for recording. *See* Ind. Code § 35-44.1-2-14; *see also Nicodemus*, 711 F.Supp.3d at 1025 ("Never once does [the Buffer Law] permit law enforcement to stop the public's ability to record."). Ordering someone not to approach does not stop that person from recording the officer's actions. And "[i]n this day and age of enhanced technology, with zoom lenses that allow individuals to capture activity at hundreds of feet," along with "ever-increasing capabilities of cellphones, drones, and common devices ubiquitously found in the hands of most every citizen," a 25-foot buffer would not stop bystanders from recording. *Nicodemus*, 711 F.Supp.3d at 1025. Indeed, one of the videos referenced by Plaintiffs as an example of the type of coverage captured by bystanders is almost certainly taken at a distance the "width of a two-car garage," *id. See* Dkt. 27-4 (Smith

Decl.) ¶ 8 (citing Lydia Reuille and Clayton McMahan, *Court Docs: Officer Performed 'Hip Toss,' Man 'Fell to the Ground' in Viral Video*, WANE 15 (Jan. 24, 2023), https://perma.cc/2VZC-RQSU.[3]

Further, police departments across Indiana prohibit their officers from interfering with "recording of [officer] activities." Dkt. 26-6 (MSCO Training Academy, *Recording Police Activity*); *see also* Dkt. 26-7 (South Bend Police Department Policy Manual, Policy 425.2) (barring interference with the right of persons to "record" officers). In a facial challenge, courts should not presume that a facially valid law will be applied unconstitutionally. *See Ctr. for Individual Freedom v. Madigan*, 697 F.3d 464, 494 (7th Cir. 2012) ("In adjudicating facial challenges, federal courts do not assume that state officials will construe state law in the most expansive way imaginable."). And regardless of whether the policies of local law enforcement fully answer the vagueness question, *see Ward v. Rock Against Racism*, 491 U.S. 781, 794–95 (1989); SA23–SA25, those policies show that local law enforcement officers understand that they cannot enforce the Buffer Law to stop recording of officers.

At bottom, the Buffer Law recognizes the importance of allowing law enforcement officers to focus on the tasks in front of them. While officers are conducting those duties, they may order bystanders not to approach—allowing the officers space to protect the public in a given situation. The law only criminalizes knowingly encroaching within that 25-foot zone *after* an officer gives a do-not-

---

[3] Video available at https://bit.ly/4fQch49.

approach order. That narrow limitation offers sufficient notice and guidance for the public and officers to know what conduct is criminalized.

## CONCLUSION

The preliminary injunction should be vacated.

Respectfully submitted,

JOHN P. LOWREY
Deputy Chief Litigation Counsel
City of Indianapolis
Office of Corporation Counsel
200 E. Washington Street, Suite 1601
Indianapolis, IN 46204
Telephone: (317) 327-4055
Email: john.lowrey@indy.gov

*Counsel for Defendant-Appellant*
*Kerry Forestal*

THEODORE E. ROKITA
Attorney General of Indiana

JAMES A. BARTA
Solicitor General

/s/ Jenna M. Lorence
JENNA M. LORENCE
Deputy Solicitor General

JOHN M. VASTAG
Deputy Attorney General

Office of the Attorney General
IGC South, Fifth Floor
302 W. Washington Street
Indianapolis, IN 46204
(463) 261-6184
Jenna.Lorence@atg.in.gov

*Counsel for Defendants-Appellants*
*Todd Rokita and Ryan Mears*

## CERTIFICATE OF COMPLIANCE

1.     This document complies with the type-volume limitation of Circuit Rule 32(c) because this document contains 8,320 words, excluding the parts exempted by Fed. R. App. P. 32(f).

2.     This document complies with the typeface requirements of Circuit Rule 32(b) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in Century Schoolbook 12-point font.

January 13, 2025                              <u>/s/ Jenna M. Lorence</u>
                                                      Jenna M. Lorence

## REQUIRED SHORT APPENDIX

Pursuant to Circuit Rule 30, Appellants submit the following as their Required Short Appendix. Appellants' Required Short Appendix contains all of the materials required under Circuit Rule 30(a) and 30(b).

January 13, 2025                                    /s/ Jenna M. Lorence
                                                   Jenna M. Lorence

No. 24-2927

**IN THE**
**UNITED STATES COURT OF APPEALS**
**FOR THE SEVENTH CIRCUIT**

REPORTERS COMMITTEE FOR FREEDOM OF THE
PRESS, *et al.*,

*Plaintiffs–Appellees*,

v.

TODD ROKITA, RYAN MEARS *and* KERRY FORESTAL,
*in their official capacities*,

*Defendants–Appellants*,

On Appeal from the United States District Court for the
Southern District of Indiana, Case No. 1:23-cv-1805-JRS-MG,
The Honorable James R. Sweeney, II, Judge

**REQUIRED SHORT APPENDIX OF DEFENDANTS–APPELLANTS**

JOHN P. LOWREY
Deputy Chief Litigation Counsel
City of Indianapolis
Office of Corporation Counsel
200 E. Washington Street, Suite 1601
Indianapolis, IN 46204
Telephone: (317) 327-4055
Email: john.lowrey@indy.gov

*Counsel for Defendant-Appellant*
*Kerry Forestal*

THEODORE E. ROKITA
Attorney General of Indiana

JAMES A. BARTA
Solicitor General
JENNA M. LORENCE
Deputy Solicitor General
JOHN M. VASTAG
Deputy Attorney General
Office of the Attorney General
IGC South, Fifth Floor
302 W. Washington Street
Indianapolis, IN 46204
(463) 261-6184
Jenna.Lorence@atg.in.gov

*Counsel for Defendants-Appellants*
*Todd Rokita and Ryan Mears*

# TABLE OF CONTENTS

Dkt. 54 – Preliminary Injunction............................................................... SA1

Dkt. 53 – Order on Motion to Dismiss and Motion for Preliminary Injunction..... SA4

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| REPORTERS COMMITTEE FOR FREEDOM OF THE PRESS, INDIANA BROADCASTERS ASSOCIATION, INDIANA PROFESSIONAL CHAPTER OF THE SOCIETY OF PROFESSIONAL JOURNALISTS, INDIANAPOLIS STAR, NEXSTAR MEDIA INC., SCRIPPS MEDIA, INC., and TEGNA INC., | ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 1:23-cv-1805-JRS-MG |
| TODD ROKITA, in his official capacity as Attorney General of Indiana, RYAN MEARS, in his official capacity as Marion County Prosecutor, and KERRY FORESTAL, in his official capacity as Marion County Sheriff, | ) ) ) ) ) ) ) | |
| Defendants. | ) | |

**Preliminary Injunction**

The Court finds that Reporters Committee for Freedom of the Press, Indiana Broadcasters Association, Indiana Professional Chapter of the Society of Professional Journalists, Indianapolis Star, Nexstar Media Inc., Scripps Media, Inc., and Tegna Inc., (collectively, "Plaintiffs"), are likely to succeed on the merits of their claim that Indiana Code § 35-44.1-2-14 (the "Buffer Law") is unconstitutional. The Buffer Law, effective July 1, 2023, provides: "A person who knowingly or intentionally approaches within twenty-five (25) feet of a law enforcement officer lawfully engaged in the execution of the law enforcement officer's duties after the law enforcement officer has

1

**SA1**

ordered the person to stop approaching commits unlawful encroachment on an investigation, a Class C misdemeanor." Ind. Code § 35-44.1-2-14.

Specifically, the Court finds that Plaintiffs are likely to prove that the Buffer Law is void for vagueness in violation of the Fourteenth Amendment to the Constitution because it (1) does not define with any specificity the kind of conduct that would prompt an order to move back and (2) contains no standards for law enforcement officers to follow in enforcing the law, leaving it susceptible to arbitrary and discretionary enforcement. The Court also finds that Plaintiffs are likely to suffer irreparable harm in the absence of preliminary relief and that there is no adequate remedy at law because Plaintiffs have established that the Buffer Law has resulted in a loss of their First Amendment rights. *See Higher Soc'y of Ind. v. Tippecanoe Cnty.*, 858 F.3d 1113, 1116 (7th Cir. 2017). The Court further finds that the balance of harms weighs in Plaintiffs' favor because Indiana's existing statutes mitigate the harms that may result from this injunction, but Plaintiffs face severe, irreparable damage to their First Amendment rights without an injunction due to the Buffer Law's vagueness and potential for arbitrary enforcement. Finally, the Court finds that a preliminary injunction is in the public interest "because the public interest is not harmed by preliminarily enjoining the enforcement of a statute that is probably unconstitutional." *American Civil Liberties Union of Ill. v. Alvarez*, 679 F.3d 583, 590 (7th Cir. 2012).

Accordingly, the Court **ISSUES A PRELIMINARY INJUNCTION ordering** that the parties; their officers, agents, servants, employees, and attorneys; and any

**SA2**

other persons who act in concert with the parties or their agents, servants, employees, and attorneys, are prohibited from enforcing Indiana Code § 35-44.1-2-14 against any individual, corporation, association, or other entity until this case has been finally resolved. Those enjoined may not issue an order to move back to more than twenty-five feet from law enforcement officers unless such order is consistent with another state or federal law, for example, if there is an operative emergency incident zone. *See* Ind. Code § 35-44.1-4-1.5.

The Court waives the security requirement of Rule 65(c) of the Federal Rules of Civil Procedure.

**SO ORDERED.**

Date: 09/27/2024

JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

Distribution to registered parties of record via CM/ECF

3

**SA3**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| REPORTERS COMMITTEE FOR ) | |
| FREEDOM OF THE PRESS, INDIANA ) | |
| BROADCASTERS ASSOCIATION, ) | |
| INDIANA PROFESSIONAL CHAPTER OF ) | |
| THE SOCIETY OF PROFESSIONAL ) | |
| JOURNALISTS, INDIANAPOLIS STAR, ) | |
| NEXSTAR MEDIA INC., SCRIPPS MEDIA, ) | |
| INC., and TEGNA INC., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | No. 1:23-cv-1805-JRS-MG |
| ) | |
| TODD ROKITA, in his official capacity as ) | |
| Attorney General of Indiana, RYAN ) | |
| MEARS, in his official capacity as Marion ) | |
| County Prosecutor, and KERRY ) | |
| FORESTAL, in his official capacity as ) | |
| Marion County Sheriff, ) | |
| ) | |
| Defendants. ) | |

**Order on Motion to Dismiss and Motion for Preliminary Injunction**

This is a case regarding the constitutionality of a state statute. An Indiana statute (the "Buffer Law") makes it a misdemeanor to "knowingly or intentionally approach[] within twenty-five (25) feet of a law enforcement officer lawfully engaged in the execution of the law enforcement officer's duties after the law enforcement officer has ordered the person to stop." Ind. Code § 35-44.1-2-14. Plaintiffs seek to enjoin it on the grounds that it violates the First and Fourteenth Amendments. Defendants filed a joint Motion to Dismiss. Defendants' Motion to Dismiss, (ECF No. 25), is **denied**. Plaintiffs' Motion for Preliminary Injunction, (ECF No. 20), is **granted**.

**SA4**

## I.    Background

The Indiana General Assembly passed the Buffer Law in April 2023, and it went into effect that July.  If a person "knowingly or intentionally approaches within twenty-five (25) feet of a law enforcement officer lawfully engaged in the execution of the law enforcement officer's duties after the law enforcement officer has ordered the person to stop," that person has committed "unlawful encroachment on an investigation," a misdemeanor.  Ind. Code § 35-44.1-2-14.

Plaintiffs are various associations and corporations involved in news reporting and production.  Reporters Committee for Freedom of the Press ("Reporters Committee") "is a nonprofit association founded by journalists and media lawyers" that works to "provide pro bono legal representation, amicus curiae support, and other legal resources to protect First Amendment freedoms."  (Compl. ¶ 16, ECF No. 1.)  The Indiana Broadcasters Association is an association of radio and television broadcasters that employ "reporters who gather news on matters of public concern, including news about law enforcement gathered through the use of photography or audiovisual recording equipment, on a routine daily basis."  (*Id.* ¶ 17.)  The Indiana Professional Chapter of the Society of Professional Journalists ("IndianaProSPJ") is an organization that "works to promote and protect First Amendment freedoms . . . and conducts professional development programs."  (*Id.* ¶ 18.)  Members of IndianaProSPJ "include reporters who gather news on matters of public concern, including news about law enforcement gathered through the use of photography or audiovisual recording equipment, on a routine daily basis."  (*Id.*)

The remaining Plaintiffs are media companies. The Indianapolis Star "is an Indianapolis-based newspaper that delivers the latest news from the area in print, mobile, and online." (*Id.* ¶ 19.) Nexstar Media is a "diversified media company" that owns and operates several local news stations in Indianapolis, Terre Haute, Fort Wayne, and Evansville. (*Id.* ¶ 20.) Scripps Media and TEGNA own and operate several local television stations, including Indianapolis stations WRTV and WTHR, respectively. (*Id.* ¶¶ 21–22.) These four Plaintiffs (together, the "Media Company Plaintiffs") all "employ[] full-time reporters who gather news on matters of public concern, including news about law enforcement gathered through the use of audiovisual recording equipment, on a routine daily basis." (*Id.* ¶¶ 19–22.)

In Count I, Plaintiffs allege that the Buffer Law violates the First Amendment as applied to them because they "intend to engage in peaceful, nonobstructive newsgathering within 25 feet of law enforcement officers performing their duties in public spaces," (Compl. ¶ 65, ECF No. 1), which is protected by the First Amendment but has the potential to be criminalized by the Buffer Law. They argue that the Buffer Law "advances no legitimate [state] interest" and "is not narrowly tailored." (*Id.* ¶¶ 68–69.)

In Count II, Plaintiffs allege that the Buffer Law violates the First Amendment because it is facially overbroad, contending that it "contains no standards channeling officers' discretion" in whether or not an officer orders someone to step back, and it reaches protected speech that does not pose a threat to law enforcement's execution of their duties. (Compl. ¶¶ 76–78, ECF No. 1.)

In Count III, Plaintiffs allege that the Buffer Law violates the Fourteenth Amendment because it is void for vagueness.  They contend the Buffer Law "provides no warning about the behavior" that may cause police to issue an order to move back and is "so standardless that it authorizes or encourages seriously discriminatory enforcement."  (Compl. ¶¶ 82–84, ECF No. 1 (internal citation omitted).)

## II.    Motion to Dismiss

Defendants filed a Joint Motion to Dismiss for Lack of Jurisdiction under Fed. R. Civ. P. 12(b)(1), arguing that Plaintiffs do not have standing and that this case is not ripe for decision.  (ECF No. 25.)  Neither argument is persuasive.

### A. Legal Standard

A Rule 12(b)(1) motion "tests the jurisdictional sufficiency of the complaint," including whether the plaintiffs have standing.  *Bultasa Buddhist Temple of Chi. v. Nielsen*, 878 F.3d 570, 573 (7th Cir. 2017).   Article III standing has three requirements.  A plaintiff must show that they have (1) suffered an injury in fact (2) that is fairly traceable to the defendant's conduct and (3) that is likely to be redressed by a favorable decision.  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).

Where a statute allegedly impacts a plaintiff's First Amendment rights, pre-enforcement challenges are well within Article III's case or controversy requirement and a plaintiff "need not risk arrest before bringing" one.  *Schirmer v. Nagode*, 621 F.3d 581, 586 (7th Cir. 2010) (citing *Holder v. Humanitarian Law Project*, 561 U.S. 1 (2010)).  "To satisfy the injury-in-fact requirement in a preenforcement action, the plaintiff must show 'an intention to engage in a course of conduct arguably affected

with a constitutional interest, but proscribed by a statute, and [that] there exists a credible threat of prosecution thereunder.'" *American Civil Liberties Union of Ill. v. Alvarez*, 679 F.3d 583, 590–91 (7th Cir. 2012) (quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979)).  A plaintiff "need not show that the authorities have threatened to prosecute him; the threat is latent in the existence of the statute." *Majors v. Abell*, 317 F.3d 719, 721 (7th Cir. 2003) (cleaned up).  A plaintiff can also "establish standing based on a *current* injury if they have resorted to self-censorship out of 'an actual and well-founded fear' that the law will be enforced against them." *Brown v. Kemp*, 86 F.4th 745, 761 (7th Cir. 2023) (quoting *Virginia v. Am. Booksellers Ass'n*, 484 U.S. 383, 393 (1988)).

## B. Standing

### i. *Plaintiffs employing journalists: Indiana Broadcasters Association, IndianaProSPJ, Indianapolis Star, Nexstar Media, Scripps Media, & TEGNA*

All Plaintiffs except Reporters Committee either employ journalists themselves or are comprised of members that employ journalists.  These Plaintiffs have adequately alleged an injury in fact to support standing.  Defendants argue that these Plaintiffs lack standing because "[t]hey do not allege that the Buffer Law has actually been enforced against them." (Defs.' Br. 4, ECF No. 26.)  However, this is not necessary for a pre-enforcement challenge where the challenged statute implicates First Amendment rights.  *Schirmer*, 621 F.3d at 586.  Plaintiffs allege that "25 feet is often too far to obtain a clear line of sight" to certain events or "reliably capture audio of those events." (Compl. ¶¶ 39–40, ECF No. 1.)  As a result, the journalists are "put to a choice between committing a crime or forgoing reporting" if they are ordered to

move back. (*Id.* ¶ 38.) Reporters have engaged in reporting that "required close contact with members of law enforcement and often relied on videos or photographs captured within 25 feet of officers performing their official duties." (*Id.* ¶ 32.) They will continue to record law enforcement officers within twenty-five feet in violation of the law, if necessary, (*id.* ¶ 33), but the "burdens and uncertainties [arising from the Buffer Law] chill the exercise of their and their reporters' First Amendment rights to document and report on public officials' activities," (*id.* ¶ 45).

Defendants argue that Plaintiffs' allegations that journalists (1) plan to continue their reporting and (2) are chilled in the exercise of their First Amendment rights are mutually exclusive. (*See* Defs.' Br. 4–5, ECF No. 26.) However, this does not impact the standing analysis. A party may plead multiple "statements of a claim . . . alternatively or hypothetically," "even if the pleadings are inconsistent." *Alper v. Altheimer & Gray*, 257 F.3d 680, 687 (7th Cir. 2001) (citing Fed. R. Civ. P. 8(d)(2)). Additionally, it is not necessarily the case that the allegations are inconsistent. For one, given the number of journalists represented by Plaintiffs, it is possible that some journalists plan to violate the law, while others have scaled back their reporting to avoid arrest or prosecution. It is not necessarily the case that the same journalist will take the same approach every time, though. On one occasion, where they cannot see the newsworthy event from further than twenty-five feet, they may intend to violate the statute, and on another occasion, they might stay back at the cost of better coverage. This intent may change day to day or even minute to minute based on the

individual journalist's reading of evolving situations and assessment of the risk of arrest.

For example, Robert Scheer, a visual journalist at the Indianapolis Star, testified that he is in close proximity with law enforcement officers "approximately every other week," and that this work "often requires [him] to get within 25 feet of law enforcement officers," generally "within—at most—ten feet . . . to capture usable audio."[1]  (Scheer Decl. ¶¶ 5, 9, ECF No. 27-3.)  Scheer testified that before the Buffer Law was enacted, he was covering a shooting at a mall in Castleton.  (*Id.* ¶ 13.)  An officer asked him to stand in a media staging area with other journalists, but Scheer declined because he "understood the officer's request to be voluntary, and . . . knew that [he] was not impeding anything officers were doing."  (*Id.*)  Now, however, he "would be more likely to comply with the officer's request to move to the media staging area in order to avoid the risk of being arrested under" the Buffer Law.  (*Id.* ¶ 14.)  This supports Plaintiffs' allegations both of intent to violate the law and a change in behavior because of it.

Defendants also argue that Plaintiffs have not established that the Buffer Law will be enforced against them or that there is a credible threat of enforcement.  (Defs.' Br. 5–12, ECF No. 26.)  Defendants' argument boils down to the contention that police will enforce the Buffer Law "only when necessary to prevent interference with

---

[1] In reviewing a Rule 12(b)(1) motion to dismiss, the district court is permitted to "look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists."  *Ezekiel v. Michel*, 66 F.3d 894, 897 (7th Cir. 1995) (quoting *Capitol Leasing Co. v. Federal Deposit Ins. Corp.*, 999 F.2d 188, 191 (7th Cir. 1993) (per curiam)).

necessary law enforcement activity." (*Id.* at 5.)  The Court is unpersuaded.  The threat of enforcement "is latent in the existence of the statute," *Majors*, 317 F.3d at 721, and Plaintiffs have received no assurances that the law will not be enforced against them, *see Commodity Trend Service, Inc. v. Commodity Futures Trading Comm'n*, 149 F.3d 679, 687 (7th Cir. 1998) (citing *Virginia v. Am. Booksellers Ass'n, Inc.*, 484 U.S. 383, 393 (1988)).  It is difficult to fathom how such an assurance of "deferential" enforcement can even be made, given the number of law enforcement departments—let alone individual officers—in Indiana.  In any event, Plaintiffs have produced evidence that their journalists have been asked to move back by law enforcement officers while gathering news, thus establishing that their fear of enforcement is well-founded.  (*See, e.g.*, Thedwall Decl. ¶ 11, ECF No. 27-1; Hums Decl. ¶ 11, ECF No. 27-2.) This is sufficient; Plaintiffs have properly alleged an injury supporting pre-enforcement standing.

### ii. Reporters Committee

Reporters Committee alleges it is "compel[led] . . . to devote resources to combatting the effects of the law that are harmful to the organization[s'] mission[s]." (Compl. ¶ 46, ECF No. 1 (quoting *Common Cause Ind. v. Lawson*, 937 F.3d 944, 950 (7th Cir. 2019) (alteration in original)).)  An organization may show an injury in fact sufficient to establish standing if it has experienced a "concrete and demonstrable injury to [its] activities" that has resulted in a "drain on the organization's resources." *Common Cause*, 937 F.3d at 950 (quoting *Havens Realty Corp. v. Coleman*, 455 U.S.

363, 379 (1982)).  The injury must "constitute[] far more than simply a setback to the organization's abstract social interests."  *Id.* (quoting *Havens*, 455 U.S. at 379).

Reporters Committee works to inform journalists of their rights and assist in defending those rights by publishing educational materials, hosting trainings, operating a legal hotline, and providing legal advice and representation.  (Compl. ¶¶ 47–49, 53–54, ECF No. 1.)  Reporters Committee alleges it "has diverted limited resources that it 'would have spent differently or not spent at all.'"  (*Id.* ¶ 55 (quoting *Lawson*, 937 F.3d at 954); *see also* Pls.' Opp. Mot. Dismiss 23, ECF No. 32.)  Specifically, it "intends to host additional trainings in Indiana to address the effects" of the Buffer Law, "anticipates an increased need for legal advice and representation," and anticipates increased use of its legal hotline.  (*Id.* ¶¶ 48–49, 53.)

Defendants counter that Reporters Committee's expenditures in response to the Buffer Law are "discretionary" and that Reporters Committee "fail[s] to demonstrate how educational and legal efforts targeting the Buffer Law impaired standard function beyond" its ordinary activities.  (Defs.' Reply 10, ECF No. 33.)  Reporters Committee normally provides educational material and legal support to journalists, Defendants argue, and has not shown "demonstrable deviations from ordinary legal and educational work targeting perceived First Amendment challenges."  (*Id.* at 11.)  Additionally, Defendants argue that the anticipated increase in traffic to Reporters Committee's hotline or anticipated increase in demand for legal services are "hypothetical demand spikes" that "constitute possible future injury, insufficient to establish standing."  (*Id.*)

Plaintiffs rely primarily on *Lawson* to support their argument for a resource diversion injury.  In *Lawson*, organizational plaintiffs challenged an Indiana law allowing the state to remove voters from the voter rolls if a third-party service identified the voter as someone who may also be registered to vote in another state. 937 F.3d at 948.  The three plaintiffs, Common Cause Indiana, the Indiana NAACP, and the League of Women Voters of Indiana, "advocate[] for voter access, conduct[] voter education to promote voter access, help[] voters overcome any challenges they face trying to vote, and help[] voters register to vote." *Id.* at 951.  Because the statute created an "enhanced risk of erroneous voter removal," the plaintiffs argued, they would "be forced to spend resources cleaning up the mess." *Id.*

The injury recognized by the Seventh Circuit in *Lawson* is strikingly similar to that alleged in this case.  For example, Oscar Anderson, Co-President of the League of Women Voters of Indiana, testified that "[a]ny time League members spend addressing the risk of the voter purge by educating voters or re-registering purged voters takes away time and resources that could otherwise be spent registering voters or assisting voters with other purposes." *Id.* at 952 (alteration in original).  Common Cause provided "training sessions aimed at educating voters and community activists about the increased risk of erroneous voter registration cancellations" that it would not have held but for the new law. *Id.*  Similarly here, Lisa Zycherman, Deputy Legal Director and Policy Counsel at Reporters Committee, testified that "Reporters Committee has already diverted resources to address the burdens imposed by the Act," including by "allocat[ing] time of its attorneys who would otherwise have

dedicated their time to providing other legal services to journalists" to challenging the law in court. (Zycherman Decl. ¶ 6, ECF No. 27-5.) Zycherman believes, based on past experience with events that "bring working journalists and law enforcement officers in close proximity," that the use of Reporters Committee's legal hotline will increase due to the Buffer Law. (*Id.* ¶ 8.) Additionally, Reporters Committee "published new resources to educate Indiana journalists about [the Buffer Law] and intends to update its existing resources" and "conduct trainings for journalists and newsrooms in Indiana to inform journalists about the [Buffer Law] and its effect on newsgathering." (*Id.* ¶ 7.)

Defendants argue that this case is more analogous to *Plotkin v. Ryan*, 239 F.3d 882 (7th Cir. 2001). However, this comparison falls short. In *Plotkin*, the Better Government Association ("BGA"), an organization whose mission is to "expose and correct election fraud and corruption" by government officials, alleged that Illinois Governor George Ryan and others were engaging in corruption. *Plotkin v. Ryan*, No. 99 C 53, 1999 WL 965718, at *1 (N.D. Ill. Sept. 29, 1999), *aff'd*, 239 F.3d 882 (7th Cir. 2001). BGA asserted standing in part because it had spent time and money "monitoring and investigating the defendants' conduct, which it [said] impaired its ability to deal with other issues of the public interest." *Id.* at *5. The district court and the Seventh Circuit rejected this argument because one of BGA's primary activities, regardless of government action, was a staffed investigative program. *Id.*; *see also Plotkin*, 239 F.3d at 886. While the "investigation may have diverted certain BGA resources into its investigative program from the other programs, . . . it [was]

not alleged that the defendants' actions [had] themselves impaired BGA's ability to perform its work." *Plotkin*, 1999 WL 965718, at *5.

Here, however, Reporters Committee has alleged that it has altered its programs in response to the Buffer Law. That defending First Amendment rights is the heart of Reporters Committee's advocacy does not preclude it from asserting resource diversion as an injury. *See Lawson*, 937 F.3d at 953–54 (rejecting Indiana's argument that plaintiffs had not established injury or diverted resources because the work performed as a result of the law was still within their missions). Reporters Committee is not asserting standing by attempting to "convert ordinary program costs into an injury in fact," but has clearly demonstrated "new burdens . . . created by the law [it] is challenging." *Id.* at 955 (citation omitted). Reporters Committee has standing to pursue the claims against Indiana.

## C. *Nicodemus* and Collateral Estoppel

Defendants also point to a then-pending case in the Northern District of Indiana, *Nicodemus v. City of South Bend*, arguing that Plaintiffs' case should be dismissed or stayed "on grounds of the first-filed rule and collateral estoppel." (Defs.' Br. Supp. Joint Mot. Dismiss 2, ECF No. 26.) However, neither is appropriate. While the Motion to Dismiss was pending, the Northern District of Indiana ruled in *Nicodemus* that the Buffer Law "has many constitutional applications within its plainly legitimate sweep" and therefore was not facially overbroad. *Nicodemus v. City of South Bend*, No. 3:23-cv-744, 2024 WL 139248, at *8 (N.D. Ind. 2024). This decision is now pending on appeal to the Seventh Circuit. No. 24-1099 (7th Cir. Jan. 23, 2024).

Defendants filed a Motion to Stay this case while *Nicodemus* is pending before the
Seventh Circuit.  (ECF No. 41.)  The motion was denied, with Magistrate Judge Mario
Garcia finding that facial overbreadth, the sole issue advanced in *Nicodemus*, did not
overlap with the additional issues brought here such that it would conserve judicial
resources or avoid inequity to stay the case.  (Order 6, ECF No. 46.)  While this Court
may agree in the end, and the Seventh Circuit may so find, that the Buffer Law is not
facially overbroad, the Court finds that Magistrate Judge Garcia's decision was sound
in that other issues are advanced in this case.

For similar reasons, the Court finds unpersuasive Defendants' collateral estoppel
arguments.[2]  Collateral estoppel, or issue preclusion, bars successive litigation of an
issue where four elements are met: "(1) the issue sought to be precluded is the same
as that involved in the prior action; (2) that issue was actually litigated; (3) the
determination of the issue was essential to the final judgment; and (4) the party
against whom estoppel is invoked was fully represented in the prior action."  *H-D
Mich., Inc. v. Top Quality Serv., Inc.*, 496 F.3d 755, 760 (7th Cir. 2007)).

Much of Defendants' argument fails at the first prong: putting aside the fact that
Nicodemus does not appear to be a journalist, the issues in this case are not the same
as those litigated in *Nicodemus*.  Defendants argue that in both cases, "[t]he single
issue is the constitutionality of" the Buffer Law.  (Defs.' Br. 21, ECF No. 26.)

---

[2] The first-filed rule allows district judges discretion to dismiss or stay a case for the purpose
of "deferring to another federal proceeding involving the same parties and issues to avoid
duplicative litigation." *Trippe Mfg. Co. v. Am. Power Conversion Corp.*, 46 F.3d 624, 629 (7th
Cir. 1995) (citing *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 183 (1952)).
Because a final decision has been reached in *Nicodemus*, the Court will address only
Defendants' collateral estoppel arguments.

However, "constitutionality" is an umbrella that contains several issues within it. Although Plaintiffs here and Nicodemus both challenged the Buffer Law as facially overbroad, Nicodemus did not bring a vagueness challenge to the law, *Nicodemus*, 2024 WL 139248, at *3 n.4, nor could he have argued that the Buffer Law is unconstitutional as applied to Plaintiffs in this case, (*see* Pls.' Opp. 8, ECF No. 32).

Additionally, although both suits involve overbreadth challenges, Plaintiffs here were not "fully represented in the prior action." *H-D Mich.*, 496 F.3d at 760. "Parties are in privity when 'there is a commonality of interest between the two entities' and when they 'sufficiently represent' each other's interests." *Studio Art Theatre of Evansville, Inc. v. City of Evansville*, 76 F.3d 128, 131 (7th Cir. 1996) (quoting *Tofany v. NBS Imaging Sys., Inc.*, 597 N.E.2d 23, 29 (Ind. Ct. App. 1992), *opinion adopted in part, vacated in part*, 616 N.E.2d 1034 (Ind. 1993)). Although "the rule against nonparty preclusion is subject to exceptions," *Taylor v. Sturgell*, 553 U.S. 880, 893 (2008), the exception Defendants seek does not apply here. Defendants argue that Plaintiffs here are in privity with Nicodemus because their "interests [were] fully represented and protected by" Nicodemus's suit. (Defs.' Br. 23, ECF No. 26.) However, the Supreme Court in *Taylor* held that a party's interest is adequately represented for preclusion purposes "only if (at a minimum)" there are "either special procedures to protect the nonparties' interests or an understanding by the concerned parties that the first suit was brought in a representative capacity." *Taylor*, 553 U.S. at 897. Defendants have not shown that either of these conditions is met. Therefore, Defendants cannot raise collateral estoppel against Plaintiffs in this case.

## D. Ripeness

Plaintiffs' claims are ripe.  Defendants argue that "[f]or the same reasons" Plaintiffs do not have standing, the suit is not ripe.  (Defs.' Br. 13, ECF No. 26.) However, Plaintiffs have established standing for a proper pre-enforcement challenge, so the issues are primarily—if not entirely—legal and fit for judicial decision.  In such cases, "the hardship of postponing judicial review weighs heavily in favor of hearing the case." *Wisconsin Right to Life State Pol. Action Comm. v. Barland*, 664 F.3d 139, 148 (7th Cir. 2011).

For these reasons, Defendants' Motion to Dismiss, (ECF No. 25), is **denied**.

## III.   Preliminary Injunction

Now the question is whether Plaintiffs are entitled to a preliminary injunction preventing enforcement of the Buffer Law.  The Court finds that they are.

## A. Legal Standard

To obtain a preliminary injunction, a plaintiff must first show (1) that they have "some" likelihood of success on the merits; (2) that traditional legal remedies are inadequate; and (3) that they will suffer irreparable harm without preliminary relief. *Speech First, Inc. v. Killeen*, 968 F.3d 628, 637 (7th Cir. 2020).  If the plaintiff proves these three elements, "the court next must weigh the harm the plaintiff will suffer without an injunction against the harm the defendant will suffer with one" and consider "any effects on non-parties" to determine whether a preliminary injunction would be in the public interest. *Courthouse News Serv. v. Brown*, 908 F.3d 1063, 1068 (7th Cir. 2018).  Under the Seventh Circuit's "sliding scale" approach, "the more likely

the plaintiff is to win on the merits, the less the balance of harms needs to weigh in

his favor, and vice versa." *Mays v. Dart*, 974 F.3d 810, 818 (7th Cir. 2020).

## B. Discussion

The Court finds that Plaintiffs are likely to succeed on their Fourteenth
Amendment void for vagueness claim.   Therefore, the Court need not address
Plaintiffs' First Amendment arguments or consider which level of scrutiny is
appropriate for Plaintiffs' challenges to the Buffer Law.   *See Greater New Orleans
Broad. Ass'n. v. United States*, 527 U.S. 173, 184 (1999) ("It is . . . an established part
of our constitutional jurisprudence that we do not ordinarily reach out to make novel
or unnecessarily broad pronouncements on constitutional issues when a case can be
fully resolved on a narrower ground.").   The Court also finds that Plaintiffs have
established irreparable harm and shown that the balance of harms and public
interest weigh in their favor.

### i. Likelihood of success on the merits

To establish a likelihood of success necessary to obtain a preliminary injunction,
Plaintiffs must demonstrate that their "claim has some likelihood of success on the
merits, not merely a better than negligible chance."   *Mays*, 974 F.3d 810, 822 (7th
Cir. 2020) (internal quotation marks omitted) (citing *Eli Lilly & Co. v. Arla Foods,
Inc.*, 983 F.3d 375, 381 (7th Cir. 2018)).

Plaintiffs argue that the Buffer Law is void for vagueness in violation of the Due
Process Clause of the Fourteenth Amendment because it contains no limiting
standards for police officers to follow or indications of what type of conduct will

prompt an officer to order someone to move back.  (Pls.' Br. Supp. Mot. Prelim. Inj.

31, ECF No. 27.)  To withstand a void for vagueness challenge, a statute must define

an offense "(1) with sufficient definiteness that ordinary people can understand what

conduct is prohibited and (2) in a manner that does not encourage arbitrary and

discriminatory enforcement." *Bell v. Keating*, 697 F.3d 445, 461 (7th Cir. 2012)

(quoting *Skilling v. United States*, 561 U.S. 358, 402–03 (2010)).  Both prongs must

be met for the statute to be upheld.  *Id.*  Plaintiffs are likely to succeed in showing

that the Buffer Law fails both prongs.

1.  Notice of prohibited conduct

The Buffer Law is clear about what conduct may lead to an arrest: refusing to obey

an officer after being told to move when one is within twenty-five feet.  However, the

constitutional vagueness analysis requires more when a law criminalizes failing to

obey such an order, as due process requires a "warning about the behavior" that will

prompt that order.  *Bell v. Keating*, 697 F.3d 445, 462 (7th Cir. 2012).  The Buffer

Law includes no such warning.  Instead, it "authorizes officers to order an individual

to withdraw for any reason (or no reason)."  (Pls.' Br. 31, ECF No. 27.)

*Bell* dealt with a Chicago ordinance that "criminalize[d] an individual's refusal to

leave a scene when so instructed by a police officer when three or more individuals

are engaging in disorderly conduct nearby."  697 F.3d at 449.  "Disorderly conduct"

was defined as "acts [that] are likely to cause substantial harm or serious

inconvenience, annoyance or alarm," all of which could trigger a dispersal order.  *Id.*

at 450.  The statute also specified that at least three people must be engaging in the

conduct. *Id.* The Seventh Circuit found that because "substantial harm" "signifies imminent property damage or violence," it is easy for a person to understand when this type of conduct is occurring and could trigger a lawful dispersal order. *Id.* at 461–62. The terms "serious inconvenience" and "alarm," however, did not give sufficient notice because they did not specify what type of behavior qualified as causing "serious inconvenience" or "alarm." *Id.* at 462. The Seventh Circuit held that although "predicating law enforcement's power on at least three people's behavior add[ed] definition and heft," the statute was impermissibly vague insofar as it allowed officers to issue a dispersal order in the face of "serious inconvenience," "alarm," and "annoyance." *Id.* at 463.

The Buffer Law does not include any parameters such as "likely to cause substantial harm" to warn what kind of behavior might cause an officer to issue a stay back order. It does not "make[] clear that conduct which *does* give rise to a lawful dispersal order." *Id.* at 461 (emphasis in original). The only limitation in the Buffer Law is the 25-foot requirement. Simply being within twenty-five feet of a police officer is not a crime, and indeed, important First Amendment rights are regularly exercised within twenty-five feet of law enforcement every single day. (*See* Thedwall Decl. ¶¶ 4–5, ECF No. 27-1; Hums Decl. ¶¶ 5, 8, ECF No. 27-2.) This is not specific enough to allow the general public or "reporters to know how to conduct themselves to avoid receiving an order to move." (Pls.' Br. 31, ECF No. 27.)

## 2.  Arbitrary and discriminatory enforcement

A law "is susceptible to discriminatory or arbitrary enforcement" "if it impermissibly delegates to law enforcement the authority to arrest and prosecute on 'an ad hoc and subjective basis.'" *Bell*, 697 F.3d at 462 (quoting *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972).  Of course, law enforcement officers retain the authority to "exercise some degree of judgment" in the performance of their duties, but the discretion to carry out "arbitrary and erratic arrests" does not comport with due process.  *Id.* (quoting *Wright v. New Jersey*, 469 U.S. 1146, 1151 (1985)).

The Buffer Law lacks standards for officers "to guide [them] in deciding who should be ordered to move and under what circumstances."  (Pls.' Br. Supp. Mot. Prelim. Inj. 32, ECF No. 27.)  There is nothing in the text of the statute requiring, for example, that the officer must observe the individual engaging in conduct "that would cause a reasonable person to believe that person intends to interfere with the execution of the officer's duties," and in fact, the General Assembly considered and rejected such an amendment.  (Pls.' Br. 3–4, ECF No. 27 (internal citation omitted).)  Instead, an officer can order reporters and others to move back simply because the officer does not want to be recorded, an unacceptable curtailment of First Amendment rights.  *See Alvarez*, 679 F.3d at 597 (quoting *Arizona Free Enterp. Club's Freedom Club PAC v. Bennett*, 564 U.S. 721, 755 (2011)) ("[T]here is practically universal agreement that a major purpose of the First Amendment was to protect the free discussion of governmental affairs.").

Defendants argue that "the Buffer Law gives adequate guidance to" officers "so as to avoid discriminatory enforcement" because the terms "25 feet," "approaches," and

"stop" are clear.  (Defs.' Opp. 34, ECF No. 34 (internal quotation marks omitted).)
However, this does nothing to define the predicate behavior that would prompt an
order to move back.  All that is clear is that if a person is within twenty-five feet, they
could be on the receiving end of an order to move back, but this fails to identify a
specific behavior that may prompt that order.  Defendants also argue, based on *Ward
v. Rock Against Racism*, 491 U.S. 781 (1989), that Plaintiffs must account for the
policies of local law enforcement organizations informing officers of citizens' right to
record.  (Defs.' Br. Supp. Mot. Dismiss 10–11, ECF No. 26; Defs.' Opp. Mot. Prelim.
Inj. 17, ECF No. 34.)  They argue that the existence of these policies "cures concerns
based on theoretical vagueness."  (Defs.' Opp. 34, ECF No. 34.)

   In *Ward*, the Supreme Court upheld a New York City ordinance requiring the use
of government personnel to control the volume of concerts in Central Park.  491 U.S.
at 803.  Specifically, Defendants point to the *Ward* Court's finding that although "the
officials implementing [the law] will exercise considerable discretion," *id.* at 794, the
scope of the ordinance was properly limited by the city's stated goals and on-the-
ground implementation, *id.* at 795.  The *Ward* Court wrote that New York City's
"policy" of deferring to concert sponsors and "practice" of "confer[ring] with the
sponsor . . . before taking any corrective action" appropriately limited officials'
discretion.  *Id.* at 795 (quoting *Rock Against Racism v. Ward*, 658 F. Supp. 1346, 1352
(S.D.N.Y. 1987)).  This was based on the district court's finding that Joseph Killian,
the author of the applicable guidelines and Program Director for the relevant area of

Central Park, "attend[ed] most if not all of the Bandshell events[ and made] it a
practice to confer with the sponsor." 658 F. Supp at 1352.

There are two key distinctions between the Buffer Law and the challenged
ordinance in *Ward* that render the case inapplicable to the vagueness analysis here.
First, as Plaintiffs point out, in *Ward*, a city official was interpreting a city ordinance.
(Pls.' Reply 5, ECF No. 38.)  Here, however, local officials interpret the statewide
Buffer Law, and no locality's policy is binding on another locality's officers, providing
no assurance that the law will be enforced uniformly.  Defendants additionally have
not pointed to any guidance referencing the Buffer Law itself, but rather have
produced police training materials from Marion County and South Bend that speak
in general terms about citizens' right to record, the limits on that right, and how
officers should respond in the event that recording is interfering with officers'
investigations.  (*See* Defs.' Br. Supp. Mot. Dismiss Exs. E, F, ECF Nos. 26-6, 26-7.)
This is not enough of a limiting policy for these two jurisdictions, let alone all of
Indiana's law enforcement units.

Second, and relatedly, *Ward*'s analysis of enforcement policies was limited to the
policy of the *single* individual who was tasked with enforcing the ordinance rather
than the *several thousand* law enforcement officers in Indiana who may enforce the
Buffer Law.  The presumption that this many officers will "always" enforce the Buffer
Law in a deferential way and "adhere to standards absent from [its] face . . . is the
very presumption that the doctrine forbidding unbridled discretion disallows." *City
of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750, 770 (1988).  Unspecific training

materials from two jurisdictions are not the kind of policy interpretations that can save a law from unconstitutional vagueness.

Finally, Defendants argue that the Buffer Law's definition of its own crime provides a limiting principle. Because the crime is called "unlawful encroachment on an investigation," the State argues, this limits police discretion to cases where there is an ongoing investigation and where an individual is encroaching upon it. (Defs.' Opp. 22, 26 n.11, ECF No. 34.) This is circular reasoning: the name of the crime alone does not define its conduct. In any case, "the title of a statute . . . cannot limit the plain meaning of the text." *Brotherhood of R.R. Trainmen v. Balt. & Ohio R.R. Co.*, 331 U.S. 519, 529 (1947).

Plaintiffs have shown that they are likely to succeed on their claim that the Buffer Law is void for vagueness and therefore unconstitutional.

### ii. Irreparable harm

Irreparable harm exists where "legal remedies such as monetary damages are inadequate" to address the harm. *Bedrossian v. Northwestern Mem'l Hosp.*, 409 F.3d 480, 842 (7th Cir. 2005). It is well established that "even short deprivations of First Amendment rights constitute irreparable harm." *Higher Soc'y of Ind. v. Tippecanoe Cnty.*, 858 F.3d 1113, 1116 (7th Cir. 2017); *see also Elrod v. Burns*, 427 U.S. 347, 373 (1976) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.").

Plaintiffs have established that reporters have (1) been asked to move several times while reporting within twenty-five feet of law enforcement—even when they

were not interfering with the officers' duties—and (2) changed behavior as a result of the Buffer Law in ways that impedes the exercise of their First Amendment right to gather and publish news. For example, Robert Scheer testified that instead of taking officers' requests to move to a media staging area as unenforceable suggestions, behaving respectfully while obtaining the best footage, he is more likely to comply with officers' request at the cost of more complete reporting. (Scheer Decl. ¶¶ 13–14, ECF No. 27-3.) Scott Hums, the Director of Content at station WTHR, testified that some journalists were asked to move back to a staging area while other people—people who were not clearly journalists—were allowed to remain at a closer distance. (Hums Decl. ¶¶ 11–12.) Defendants' arguments, to the extent they question Plaintiffs' alleged irreparable harm, focus on whether Plaintiffs have suffered actual harm as it relates to the standing analysis, not whether that harm is irreparable. (*See* Defs.' Br. 9–13, ECF No. 34.) Plaintiffs have established sufficient harms to show standing—as discussed above—and have cleared the bar for irreparable harm due to the Buffer Law's impact on their First Amendment freedoms.

### iii. Balance of harms and the public interest

The balance of harms and the public interest weigh in Plaintiffs' favor. In the Seventh Circuit, once a plaintiff has established a likelihood of success on the merits, the court uses a "sliding scale" to determine the balance of harms, where "the more likely the plaintiff is to win on the merits, the less the balance of harms needs to weigh in his favor, and vice versa." *Mays*, 974 F.3d at 818 (citing *Ty, Inc. v. Jones Grp., Inc.*, 237 F.3d 891, 895 (7th Cir. 2001)). Where a state action results in loss of

First Amendment freedoms, "the balance of harms normally favors granting preliminary injunctive relief because the public interest is not harmed by preliminarily enjoining the enforcement of a statute that is probably unconstitutional." *Alvarez*, 679 F.3d at 589–90.

Defendants argue that Indiana would be harmed by an injunction because the Buffer Law advances "no less than ten weighty interests, including public safety, [officer] safety, and privacy rights." (Defs.' Opp. 35, ECF No. 34.)  To support this argument, Defendants offer an expert report from Dr. Richard Celeste, a retired law enforcement officer who has served as an expert witness or consultant in several cases regarding police practices, officer safety, and use of force.  (*See* Celeste Report 42–70, ECF No. 34-2.)  Plaintiffs argue that other Indiana laws address these concerns without infringing on First Amendment rights.  (*See* Pls.' Br. 27–28, ECF No. 27.)  For example, Indiana already criminalizes "forcibly resist[ing], obstruct[ing], or interfer[ing] with a law enforcement officer or a person assisting the officer while the officer is lawfully engaged in the execution of the officer's duties."  Ind. Code § 35-44.1-3-1(a)(1).  State law also prohibits "refus[ing] to leave an emergency incident area," such as a "crime scene" or a "police investigation," "immediately after being requested to do so by . . . a law enforcement officer."  Ind. Code §§ 35-44.1-4-1.5, 35-44.1-4-5.

The unique harm that the Buffer Law purports to address, then, is the potential harm that comes from a person being within twenty-five feet of a police officer. Defendants argue that a twenty-five-foot buffer is important because it gives law

enforcement officers enough time to react if a "would-be assailant[]" is running at them.  (Defs.' Opp. 30, ECF No. 34.)  But it is unclear what harm is done by a person whose behavior is not already criminalized—i.e., a person who is not assaulting anyone, obstructing or interfering with an investigation, or refusing to leave an active crime scene.  *See McCullen v. Coakley*, 573 U.S. 464, 492 (2014) (purported state interest and risk of harm "can be readily addressed through existing local ordinances" and "available generic criminal statutes").  Law enforcement officers cannot expect to operate with a twenty-five-foot forcefield around them whenever they choose to enforce the Buffer Law, and certainly not at the expense of established rights.

Indiana's existing criminal statutes mitigate the potential harms that would result from enjoining the enforcement of the Buffer Law.  Conversely, without an injunction, Plaintiffs would continue to be harmed by the vagueness of the law, its potential for arbitrary enforcement, and the resulting curtailment of their First Amendment rights.  A preliminary injunction is therefore in the public's interest.

## C. Bond

Indiana will not incur any damages from the preliminary injunction.  Therefore, the Court waives the security requirement of Rule 65(c) of the Federal Rules of Civil Procedure.  *See Habitat Educ. Ctr. v. United States Forest Serv.*, 607 F.3d 453, 458 (7th Cir. 2010) (district court can waive bond requirement when there is no danger the opposing party will incur any damages from the injunction).

## IV.   Conclusion

Plaintiffs have standing to bring their claims and their claims are ripe for decision. The Northern District of Indiana's refusal to grant an injunction in *Nicodemus* does not impact this finding of standing.  Defendants' Motion to Dismiss, (ECF No. 25), is **denied**.

Plaintiffs have shown that they are likely to succeed on their claim that the Buffer Law is void for vagueness in violation of the Fourteenth Amendment, established irreparable harm, and satisfied the remaining requirements for a preliminary injunction.  Plaintiffs' Motion for Preliminary Injunction, (ECF No. 20), is **granted**. The injunction will issue by separate order.

   **SO ORDERED**.

Date: 09/27/2024

JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

Distribution to all counsel of record via CM/ECF

**CERTIFICATE OF SERVICE**

I hereby certify that on January 13, 2025, I electronically filed the foregoing document with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

January 13, 2025                                        /s/ Jenna M. Lorence
                                                       Jenna M. Lorence
                                                       Deputy Solicitor General

                                                       Office of the Indiana Attorney General
                                                       Indiana Government Center South
                                                       302 W. Washington Street
                                                       Indianapolis, IN 46204-2770
                                                       Telephone: (463) 261-6184
                                                       Facsimile: (317) 232-7979
                                                       Jenna.Lorence@atg.in.gov