# IN THE
# UNITED STATES COURT OF APPEALS
# FOR THE SEVENTH CIRCUIT

REPORTERS COMMITTEE FOR FREEDOM OF THE
PRESS, *et al.*

*Plaintiff-Appellees*,

v.

TODD ROKITA, RYAN MEARS, *and* KERRY FORESTAL,
*in their official capacities*,

*Defendants-Appellants.*

On Appeal from the United States District Court for the
Southern District of Indiana, Case No. 1:23-cv-1805-JRS-MG,
The Honorable James R. Sweeney, II, Judge

## REPLY BRIEF FOR DEFENDANTS-APPELLANTS

THEODORE E. ROKITA
Attorney General of Indiana

JOHN P. LOWREY
Deputy Chief Litigation Counsel
City of Indianapolis
Office of Corporation Counsel
200 E. Washington Street, Suite 1601
Indianapolis, Indiana 46204
Telephone: (317) 327-4055
Email: john.lowrey@indy.gov

*Counsel for Defendant-Appellant
Kerry Forestal*

JAMES A. BARTA
Solicitor General
JENNA M. LORENCE
Deputy Solicitor General
JOHN M. VASTAG
Deputy Attorney General
Office of the Attorney General
IGC South, Fifth Floor
302 W. Washington Street
Indianapolis, IN 46204
(317) 232-0709
James.Barta@atg.in.gov

*Counsel for Defendants-Appellants
Todd Rokita and Ryan Mears*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................ ii

INTRODUCTION .................................................................................................... 1

ARGUMENT .......................................................................................................... 2

I.     Plaintiffs' Alleged Injury Is Not Traceable to the Buffer Law, and Is Not Redressed by an Injunction Against It ................................................................. 2

II.    The Buffer Law Does Not Violate the Fourteenth Amendment ...................... 5

      A.    The Buffer Law's clear and definite phrasing allows ordinary people to understand what conduct is criminal ..................................... 5

      B.    The Buffer Law does not invite arbitrary or discriminatory enforcement ................................................................................. 7

III.   The Preliminary Injunction Cannot Be Sustained Under a First Amendment Theory ......................................................................................... 11

      A.    The Buffer Law is not facially overbroad ............................................. 11

      B.    To the extent that the Buffer Law implicates the First Amendment, it is a valid content-neutral regulation ................................................. 16

CONCLUSION ....................................................................................................... 24

# TABLE OF AUTHORITIES

<span style="font-variant: small-caps">Cases</span>

*ACLU of Illinois v. Alverez,*
    679 F.3d 583 (7th Cir. 2012) ................................................ 13, 14, 20

*Advantage Media, L.L.C. v. City of Eden Prairie,*
    456 F.3d 793 (8th Cir. 2006) ................................................ 4

*Agnew v. Gov't of the Dist. of Columbia,*
    920 F.3d 49 (D.C. Cir. 2019) ................................................ 8

*Ariz. State Leg. v. Ariz. Indep. Redistricting Comm'n,*
    576 U.S. 787 (2015) ................................................ 20

*Bell v. Keating,*
    697 F.3d 445 (7th Cir. 2012) ................................................ *passim*

*Brown v. Battle Creek Police Dept.,*
    844 F.3d 556 (6th Cir. 2016) ................................................ 20

*Brown v. Kemp,*
    86 F.4th 745 (7th Cir. 2023) ................................................ 15, 16, 18

*California v. Texas,*
    593 U.S. 659 (2021) ................................................ 2

*Capeheart v. Terrell,*
    695 F.3d 681 (7th Cir. 2012) ................................................ 4

*City of Austin v. Reagan Nat'l Advertising of Austin,*
    596 U.S. 61 (2022) ................................................ 18

*City of Chicago v. Morales,*
    527 U.S. 41 (1999) ................................................ 6, 7, 8, 9

*Clapper v. Amnesty Int'l USA,*
    568 U.S. 398 (2013) ................................................ 2, 4

*Ctr. for Individual Freedom v. Madigan,*
    697 F.3d 464 (7th Cir. 2012) ................................................ 11

*Forsyth Cnty. v. Nationalist Mvmt.,*
    505 U.S. 123 (1992) ................................................ 19

CASES [CONT'D]

*Glik v. Cunniffe,*
   655 F.3d 78 (1st Cir. 2011) ............................................... 14

*Grayned v. City of Rockford,*
   408 U.S. 104 (1972) ........................................................ 10

*Gresham v. Peterson,*
   225 F.3d 899 (7th Cir. 2000) ............................................ 22

*John Doe No. 1 v. Reed,*
   561 U.S. 186 (2010) ........................................................ 23

*John K. MacIver Inst. for Pub. Pol'y, Inc. v. Evers,*
   994 F.3d 602 (7th Cir. 2021) ...................................... 13, 23

*Knowlton v. City of Wauwatosa,*
   119 F.4th 507 (7th Cir. 2024) .......................................... 18

*Kolender v. Lawson,*
   461 U.S. 352 (1983) ....................................................... 6, 7

*Matney v. Cnty. of Kenosha,*
   86 F.3d 692 (7th Cir. 1996) ............................................. 22

*Moody v. NetChoice, LLC,*
   603 U.S. 707 (2024) .............................................. 11, 12, 15

*Nicodemus v. City of South Bend,*
   No. 24-1099 (7th Cir. Sept. 27, 2024) ............................... 11

*Nicodemus v. City of South Bend,*
   711 F. Supp. 3d 1015 (N.D. Ind. 2024) ......................*passim*

*Perkins v. Hart,*
   2023 WL 8274477 (5th Cir. Nov. 30, 2023) .................. 14, 15

*Randall v. Sorrell,*
   548 U.S. 230 (2006) ........................................................ 20

*Reed v. Town of Gilbert,*
   576 U.S. 155 (2015) ........................................................ 18

*Schirmer v. Nagode,*
   621 F.3d 581 (7th Cir. 2010) ............................................. 3

CASES [CONT'D]

*Shuttlesworth v. City of Birmingham,*
   382 U.S. 87 (1965) ................................................................ 10

*Skilling v. United States,*
   561 U.S. 358 (2010) ............................................................ 5, 6

*Smith v. Exec. Dir. of Ind. War Memorial's Comm'n,*
   742 F.3d 282 (7th Cir. 2014) ................................................ 19

*Speech First, Inc. v. Killeen,*
   968 F.3d 628 (7th Cir. 2020) .................................................. 3

*Stokes v. City of Madison,*
   930 F.2d 1163 (7th Cir. 1991) .............................................. 22

*Thayer v. City of Chicago,*
   110 F.4th 1040 (7th Cir. 2024) ........................................ 12, 15

*Triple G Landfills, Inc. v. Bd. of Comm'rs of Fountain Cnty.,*
   977 F.2d 287 (7th Cir. 1992) ............................................. 4, 17

*Trump v. Int'l Refugee Assistance Project,*
   582 U.S. 571 (2017) ............................................................ 16

*United States v. Bonin,*
   932 F.3d 523 (7th Cir. 2019) ................................................ 20

*United States v. Hansen,*
   599 U.S. 762 (2023) ............................................................ 12

*United States v. Johnson,*
   875 F.3d 360 (7th Cir. 2017) ................................................ 11

*United States v. O'Brien,*
   391 U.S. 367 (1968) ........................................................ 17, 18

*United States v. Salerno,*
   481 U.S. 739 (1987) .............................................................. 5

*Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.,*
   455 U.S. 489 (1982) .............................................................. 5

*Ward v. Rock Against Racism,*
   491 U.S. 781 (1989) ............................................................ 22

## Cases [Cont'd]

*Zemel v. Rusk,*
  381 U.S. 1 (1965) ................................................................. 13

## Statutes

Ind. Code § 35-44.1-2-14 ..............................................*passim*

Ind. Code § 35-44.1-3-1(a)(1) ....................................... 19

Ind. Code § 35-44.1-4-2 .................................................. 3

Ind. Code § 35-44.1-4-5 ................................................ 2, 3

**INTRODUCTION**

Indiana's Buffer Law strikes a constitutional balance between protecting law enforcement and other interests. Under the law, an officer who needs to have her undivided attention on a task can order someone to stop approaching, without first having to discern whether that person poses a threat, will interfere with police activity, or will endanger himself. But officers cannot tell persons to disperse to some ill-defined distance or arrest unwitting souls. Only a person who knowingly approaches within 25 feet after being ordered to stop approaching can be arrested.

Plaintiffs do not dispute that the Buffer Law provides clear notice of what conduct is prohibited. Instead, in arguing that the law is void for vagueness, they focus entirely on the discretion it confers. But discretion is not a dirty word. As the canonical cases from the Supreme Court and this Court illustrate, discretion can become a problem in the absence of minimal guidelines bounding it. But Indiana's law does not give officers discretion to make law through the interpretation of inherently subjective terms. It gives them precise, objective guidance, and limits the extent to which they can stop encroachment to 25 feet, the width of a two-car garage.

Rather than simply defend the district court's vagueness analysis, Plaintiffs argue that the Buffer Law violates the First Amendment. Yet Plaintiffs disregard that most of the Buffer Law's applications do not implicate the peaceful, nonobstructive newsgathering activities allegedly protected by the First Amendment. And to the extent that Plaintiffs are merely challenging the law's application to reporters engaged in newsgathering, the current injunction cannot be sustained on

that ground. Nor is the law unconstitutional as applied to newsgathering. It does not prevent the public from recording police. It merely places reasonable, content-neutral limits on how close the public can approach police while recording their activities.

Regardless of the merits of their claims, Plaintiffs' claimed injuries are not traceable to the Buffer Law's "do not approach" rule, nor would they be redressed by an injunction against it. This Court should vacate the preliminary injunction.

## ARGUMENT

### I. Plaintiffs' Alleged Injury Is Not Traceable to the Buffer Law, and Is Not Redressed by an Injunction Against It

Plaintiffs do not have standing to assert their First or Fourteenth Amendment challenges. Standing requires plaintiffs to demonstrate that the alleged injury is "fairly traceable to the challenged action" and "redressable by a favorable ruling." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013). Plaintiffs argue that the Buffer Law injures them because they have been "asked to move back by law enforcement while gathering news." Resp. Br. 28. But the challenged statute only allows officers to order a person to "stop approaching," Ind. Code § 35-44.1-2-14; it does not confer authority on law enforcement to order someone to "move back." *Another statute* gives officer authority to tell a person to "leave an emergency incident area." Ind. Code § 35-44.1-4-5. Plaintiffs, however, have challenged only the Buffer Law. So their alleged injury is not traceable to the challenged statute or redressable by an injunction against it. *See California v. Texas*, 593 U.S. 659, 678–80 (2021).

Plaintiffs cannot "manufacture standing" by alleging self-censorship or resource diversion. *Clapper*, 568 U.S. at 416; *contra* Resp. Br. 28. Any alleged self-

censorship must be based on an "objectively reasonable" fear. *Speech First, Inc. v. Killeen*, 968 F.3d 628, 638 (7th Cir. 2020). Plaintiffs cannot establish standing by invoking "conduct . . . clearly outside the statute's scope." *Schirmer v. Nagode*, 621 F.3d 581, 587 (7th Cir. 2010) (quotation omitted). But that is what Plaintiffs do. They allege that reporters have been ordered to "move back" from "the scene of a shooting at a bar," Supp.App.3, and to "move back to what [officers] often call a 'media staging area' that might be as far as several blocks away from the scene," Supp.App.4. Yet the Buffer Law does not authorize officers to tell reporters to "move back" from an emergency incident, much less move back "several blocks." The Buffer Law only makes it unlawful to "approach[]" within "twenty-five (25) feet of a law enforcement officer" after receiving an order to "stop approaching." Ind. Code § 35-44.1-2-14.

Plaintiffs, moreover, do not have standing to challenge the Buffer Law where other laws would require them to keep 25 feet back—such as where officers have invoked the law requiring persons to "leave an emergency incident area." Ind. Code § 35-44.1-4-5; *see* Opening Br. 13–14. Under those circumstances, an injunction against the Buffer Law would not clear the way for reporters to film or photograph events from less than 25 feet away. *See* Ind. Code § 35-44.1-4-2 (defining "emergency incident area" to include the greater of a marked zone or 25 feet from the incident's perimeter). Reporters still would find themselves unable to lawfully photograph or film emergency incidents from less than 25 feet away.

Plaintiffs contend that they do not have to show an injunction against the Buffer Law would provide them with "complete relief." Resp. Br. 29. But unless

Plaintiffs' members have an avowed intent to violate other, unchallenged laws requiring them to keep at least 25 feet back—something that the members have not alleged—an injunction against the Buffer Law will not provide those members *any* relief. *See Advantage Media, L.L.C. v. City of Eden Prairie*, 456 F.3d 793, 801 (8th Cir. 2006) (holding there was no redressability because "other unchallenged provisions" would still bar plaintiffs' preferred course of conduct).

Nor does it help Plaintiffs to argue that reporters attend "public assemblies, rallies, and press conferences." Resp. Br. 30 (citations omitted). Plaintiffs have not alleged that officers have invoked, or announced an intention to invoke, the Buffer Law at those types of non-emergency events. Rather, Plaintiffs point to incidents covered by the emergency-incident statute—shootings, Supp.App.3, 17, and arrests, Supp.App.12. Whether officers will invoke the Buffer Law as Plaintiffs imagine is speculative. *See Clapper*, 568 U.S. at 410, 411.

At the very least, the absence of evidence indicating whether and how officers will invoke the Buffer Law in situations falling outside the emergency-incident statute demonstrates the lack of a ripe dispute. Plaintiffs cannot know whether the Buffer Law will be applied "as anticipated" to non-emergency situations or "at all," making "the possibility of any future injury[] too remote." *Capeheart v. Terrell*, 695 F.3d 681, 684–85 (7th Cir. 2012); *see Triple G Landfills, Inc. v. Bd. of Comm'rs of Fountain Cnty.*, 977 F.2d 287, 288–89 (7th Cir. 1992) (courts must "avoid the premature adjudication of cases when the issues posed are not fully formed, or when the nature and extent of the statute's application are not certain").

## II. The Buffer Law Does Not Violate the Fourteenth Amendment

Plaintiffs agree (at 34) that they have brought a facial Fourteenth Amendment challenge against Indiana's law, "the most difficult challenge to mount successfully," *United States v. Salerno*, 481 U.S. 739, 745 (1987). So they must "demonstrate that the law is impermissibly vague in all of its applications." *Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 497 (1982); *see* Resp. Br. 35–36. Indiana's law survives any void-for-vagueness challenge because it defines an offense "(1) with sufficient definiteness that ordinary people can understand what conduct is prohibited and (2) in a manner that does not encourage arbitrary and discriminatory enforcement." *Bell v. Keating*, 697 F.3d 445, 461 (7th Cir. 2012) (quoting *Skilling v. United States*, 561 U.S. 358, 402–03 (2010)).

### A. The Buffer Law's clear and definite phrasing allows ordinary people to understand what conduct is criminal

Plaintiffs do not quarrel with the district court's conclusion that Indiana's Buffer Law "is clear about what conduct may lead to an arrest." SA20. It prohibits someone from "knowingly or intentionally approach[ing] within twenty-five (25) feet of a law enforcement officer lawfully engaged in the execution of the law enforcement officer's duties" if the officer "has ordered the person to stop approaching." Ind. Code § 35-44.1-2-14. Instead, Plaintiffs argue that the statute's linguistic clarity is irrelevant because it fails to provide "'any ascertainable standard' for enforcement." Resp. Br. 35 n.8; *see id.* at 42–43. But as the Supreme Court made clear in *Skilling*, whether a statute "encourage[s] arbitrary and discriminatory enforcement" is a distinct consideration from whether it articulates the offense "with sufficient

definiteness that ordinary people can understand what conduct is prohibited." 561 U.S. at 402–03 (quoting *Kolender v. Lawson*, 461 U.S. 352, 357 (1983)). Plaintiffs repeat the district court's error by conflating the two. *See* Opening Br. 18–23.

Plaintiffs do not discuss *Skilling*. Instead, they argue that a plurality opinion from *City of Chicago v. Morales*, 527 U.S. 41 (1999), controls. Resp. Br. 36–37. But they ignore that *Morales* applied the same two-part test as *Skilling*. *See Morales*, 527 U.S. at 56 (citing *Kolender,* 461 U.S. at 357). The "definiteness" problem with the ordinance in *Morales* was that it defined "loiter"—remaining "in any one place with no apparent purpose"—in a way that bereaved the term of any definite meaning. 527 U.S. at 56–57 (plurality op). "It is difficult to imagine how any citizen . . . would know if he or she had an 'apparent purpose.'" *Id.* at 56–57. The plurality rejected the argument that this ambiguity was cured by the fact that "loiterers are not subject to sanction until after they have failed to comply with an officer's order to disperse." *Id.* at 58. But that reasoning at most suggests there are limits to whether police orders can resolve ambiguities in an ordinance or statute. It does not suggest that a statute can be invalidated for want of "sufficient definiteness" if the statute itself uses language that "ordinary people can understand." *Skilling*, 561 U.S. at 402.

Plaintiffs further confuse things (at 38–40) by conflating *Bell*'s analysis of separate *Skilling* considerations. In *Bell*, this Court held that the code provision allowing dispersal for "substantial harm" was "sufficient[ly] definite[]" because an ordinary person could understand what that meant. 697 F.3d at 461. The Court explained that other terms—"serious inconvenience," "alarm," and "annoyance"—

were not sufficiently definite because "individuals of common intelligence must necessarily guess at what it means" to (for example) "annoy." *Id.* at 462 (cleaned up).

*Bell* did not create a new test for "sufficient definiteness" keyed to the discretion a statute confers; instead, *Bell* applies *Skilling*'s two-part test. *Id.* at 461. It discussed the potential for standardless enforcement only in relation to *Skilling*'s second prong, which focuses on arbitrary enforcement. *See id.* at 462–63. Plaintiffs do not address the problems their reading of *Bell* would create. *See* Opening Br. 21–23.

**B.     The Buffer Law does not invite arbitrary or discriminatory enforcement**

Given that the first prong of the *Skilling* test is met, the only remaining question is whether Indiana's Buffer Law invites "arbitrary or discriminatory enforcement." *Bell*, 697 F.3d at 461. The Supreme Court has stated that "the more important aspect of vagueness doctrine is . . . the requirement that a legislature establish minimal guidelines to govern law enforcement.'" *Kolender*, 461 U.S. at 358. Indiana's law sets those minimum guidelines. Law enforcement officers may only issue a do-not-approach order while lawfully conducting their duties. They may only prevent persons from approaching closer than 25 feet. And prosecutors may not charge anyone who unwittingly approaches within 25 feet of an officer.

Although Plaintiffs argue (at 37) that similar considerations proved insufficient in *Morales*, they overlook critical differences. There, the problem was that the vague definition of "loitering" left lawmaking to the "moment-to-moment judgment of the police." 527 U.S. at 60–61 (majority opinion). Under the ordinance, two people could be engaged in the same activity, and one officer might decide they

were standing around without an "apparent purpose" (thus violating the ordinance) while another might decide they were not (thus no violation). For that reason, the Court rejected the argument that the argument that other limitations cured the problem: "The 'no apparent purpose' standard . . . is inherently subjective." *Id.* at 62; *see Agnew v. Gov't of the Dist. of Columbia*, 920 F.3d 49, 55 (D.C. Cir. 2019) (the ordinance left "to the unguided judgment of police what constituted an 'apparent purpose'"). By contrast, Indiana's Buffer Law leaves no room for debate among the police about whether someone is violating the statute. Every person who, after receiving a "do not approach order," approaches within 25 feet of an officer lawfully performing his duties is violating the statute while every person who does not is not.

In *Morales*, moreover, the lack a *mens rea* requirement, 527 U.S. at 55, and the "vague phrasing" of dispersal orders exacerbated the problems created by the inherently subjective definition of "loitering." *id.* at 59 (plurality opinion); *see id.* at 62 (majority opinion). Those problems are missing here. The Buffer Law criminalizes only "knowing[]" or "intentional[]" violations. Ind. Code § 35-44.1-2-14. And the statute does not authorize vague police orders, such as an order "to disperse and remove themselves from the area"—an order that would invite a "host of questions" about how long persons must remain apart and how far they must move. *Morales*, 527 U.S. at 59 (plurality opinion). Under the Buffer Law, police can only order persons to "stop approaching" closer than 25 feet. Ind. Code § 35-44.1-2-14. Plaintiffs do not dispute that people can understand what an order to stop approaching means.

*Bell* is inapplicable for similar reasons as *Morales*. In *Bell*, the ordinance granted officers broad discretion to order persons to disperse where three persons in the vicinity were likely to cause "serious inconvenience, annoyance or alarm." 697 F.3d at 450. As in *Morales*, the ordinance "in practice le[ft] the definition of its terms"—inconvenience, annoyance, and alarm—"to law enforcement officers." *Id.* at 463. And as in *Morales*, the ordinance threated to allow officers to "quiet[] protected expression" by ordering bystanders to disperse. *Id.* By contrast, Indiana's law does not allow officers to implement their own subjective understandings of vaguely worded terms or order dispersal to some undefined distance for an unspecified period. Nothing in Indiana's law permits any officer to tell a person to stop speaking, recording, or participating in any protected expression so long as they stop "approaching" within 25 feet after receiving an order to do so. That is why Indiana's law does not need for an officer to find that a "do not approach" order is necessary. *Contra* Resp. Br. 40. Indiana's law already substantially limits police discretion.

Plaintiffs claim (at 39) that Indiana's law is no better than a law requiring people to "do what any police officer tells you to do . . . on Tuesdays" because people may approach officers for "innocent" reasons. But that overlooks not only the limits that the statute places on officer discretion, but also what the statute is designed to address: the danger that bystanders will divert officers' attention by approaching within 25 feet while officers are trying to conduct their duties. *See* Opening Br. 3–4. A person approaching within 25 feet of an officer need not have any ill will towards an officer yet still divide that officer's attention. *Id.* at 28–29.

Plaintiffs do not contend that any of the other cases the district court cited resemble Indiana's statute. *See* Opening Br. 26–27. Instead, they cite *Shuttlesworth v. City of Birmingham*, 382 U.S. 87 (1965). But there is a great difference between the law in *Shuttlesworth*, which allowed officers to arrest anyone "standing or loitering" on a public sidewalk, 382 U.S. at 91, and Indiana's law, which is limited in application only to when someone approaches within 25 feet of an officer conducting their official duties after being ordered not to do so. Indiana's law does not allow officers to each decide for themselves what constitutes "standing" or "loitering."

Plaintiffs assert (at 46) the State's brief demonstrates the opposite, claiming that the State both claims it is and is not a crime to be within 25 feet of an officer. That is not true. What the State said is that, "[i]f a person's goal is to *avoid receiving an order not to approach*—which, to be clear, is not the conduct that the Buffer Law criminalizes—he may stay 25 feet away from any police officer engaged in official conduct." Opening Br. 22 (emphasis added). Of course, if a person chooses to come within 25 feet of an officer and receives an order to not approach any closer, then the person must obey to avoid arrest. *See* Opening Br. 1, 4, 16–17, 22, 23–24, 30–31. But there is no logical inconsistency between saying that it is not a crime to be 25 feet from an officer and that it is a crime to approach after receiving an order to stop approaching. The crime under the Buffer Law is disobeying a lawful "do not approach" order, not simply standing within 25 feet from an officer.

Ultimately, the mere fact that Indiana's Buffer Law gives officers some degree of "flexibility and reasonable breadth" is not a constitutional flaw. *Grayned v. City of*

*Rockford*, 408 U.S. 104, 110 (1972); *see United States v. Johnson*, 875 F.3d 360 (7th Cir. 2017). Plaintiffs' arguments about discretion effectively invite courts to presume laws granting discretion will be applied unconstitutionally—something courts must avoid on facial challenges. *See Ctr. for Individual Freedom v. Madigan*, 697 F.3d 464, 494 (7th Cir. 2012)). And regardless of whether the exemplar law enforcement policies are "binding" interpretation of the Buffer Law, *see* Resp. Br. 41, the policies show that there is no reason to assume the Buffer Law will be enforced unconstitutionally.

## III. The Preliminary Injunction Cannot Be Sustained Under a First Amendment Theory

Plaintiffs alternatively argue the preliminary injunction should be upheld on First Amendment grounds, Resp. Br. 47–65—a legal theory that the district court never adopted. This Court need not address any First Amendment issues in the first instance, especially since this Court is poised to address a First Amendment challenge to the law in an appeal argued and submitted on September 27, 2024. *See Nicodemus v. City of South Bend*, No. 24-1099 (7th Cir.). Regardless, Plaintiffs do not have a substantial likelihood of success on their claim that the Buffer Law violates the First Amendment, either on its face or to any purported "as applied" challenge.

### A. The Buffer Law is not facially overbroad

Plaintiffs argue that the Buffer Law is "facially overbroad" because the law allegedly impedes "newsgathering" in "'traditional public fora.'" Resp. Br. 59, 62–63. To succeed on a facial challenge, a plaintiff must show that "a substantial number of [the law's] applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *Moody v. NetChoice, LLC*, 603 U.S. 707, 723 (2024); *see*

*Thayer v. City of Chicago*, 110 F.4th 1040, 1042–43 (7th Cir. 2024). That standard is "rigorous." *Moody*, 603 U.S. at 723. It requires a court to consider a statute's "full range of applications"—not merely the statute's allegedly unconstitutional applications—"and compare the two sets." *Id.* at 726. And only where the statute "'prohibits a substantial amount of protected speech relative to its plainly legitimate sweep'" can the challenged statute be held unconstitutional. *Id.* at 744.

Plaintiffs cannot demonstrate that the Buffer Law is overbroad. Much of the activity that the Buffer Law regulates has nothing to do with allegedly protected activities. The Buffer Law prohibits *any person*—not just reporters engaged in newsgathering—from approaching within 25 feet of an officer lawfully engaged in his duties after being ordered not to approach. *See* Ind. Code § 35-44.1-2-14. And its restrictions apply not just where officers are conducting their duties on traditional public fora like public sidewalks, but also where officers are executing their duties on private property, government property, and other places where the public has no right to be. Plaintiffs do not even attempt to meet their burden of showing that unobstructive newsgathering activities in a traditional public forum constitute a "substantial amount" of what is regulated. *Moody*, 603 U.S. at 744. Instead, Plaintiffs merely fault the statute for not being more "narrowly tailored." Resp. Br. 62. That alone makes the "strong medicine" of invalidation for facial overbreadth inappropriate. *United States v. Hansen*, 599 U.S. 762, 770 (2023) (cleaned up).

On top of that, Plaintiffs' premise—that the Buffer Law necessarily infringes on a First Amendment right to newsgathering in traditional public fora—is wrong.

This Court has held that the "making [of] an audio or audiovisual recording" is entitled to some degree of constitutional consideration against "laws that restrict the use of expressive media." *ACLU of Illinois v. Alverez*, 679 F.3d 583, 595 (7th Cir. 2012). But that protection "does not carry with it the unrestrained right to gather information." *John K. MacIver Inst. for Pub. Pol'y, Inc. v. Evers*, 994 F.3d 602, 612 (7th Cir. 2021) (quoting *Zemel v. Rusk*, 381 U.S. 1, 17 (1965)). And "it goes without saying that the police may take all reasonable steps to maintain safety and control" without running afoul of any constitutional protections for newsgathering. *Alvarez*, 679 F.3d at 607.

The Buffer Law does not implicate Plaintiffs' asserted right to newsgathering, at least in the vast majority of its potential applications. The statute does not "stop the public's ability to record. The public retains that right." *Nicodemus*, 711 F. Supp. 3d 1015, 1025 (N.D. Ind. 2024). What the statute does is prevent people from approaching an offer closer than 25 feet where the officer—seeking to focus on a more pressing problem—issues an order to stop approaching. But as the facts of *Nicodemus* illustrate, "[i]n this day and age of enhanced technology. . . it seems rather strained to argue that citizens will suffer a substantial burden on their ability to record meaningfully" when standing 25 feet—"a common width of a two-car garage"—from police officers. *Id.* In that case, a "citizen-journalist" operating without the technology or resources of large media organizations was "easily" able to "capture events much greater than 25 feet and even the audio of officers speaking at greater distance." *Id.* at 1026.

Plaintiffs cannot refute the *Nicodemus* court's finding that persons can easily capture video and audio from 25 feet, at least in many situations. Instead, they cite (at 58–59) a declaration explaining that reporters try to get closer than 25 feet "to capture high-quality sound and video" and to "get a clear picture of what's going on." Supp.App.2. But none of this Court's decisions establish that any protections for newsgathering encompass a "right to put a mic at the officer's mouth, or that of a victim, suspect, informant, arrestee, or witness, or to put a camera in their faces." *Nicodemus*, 711 F. Supp. 3d at 1026. To the contrary, its decisions are unequivocal that officers may take "reasonable steps to maintain safety and control." *Alverez*, 679 F.3d at 607. That is why even Plaintiffs are forced to describe their asserted right as a right to "peaceful, nonobstructive newsgathering." Resp. Br. 48. Thus, Indiana law does not implicate that right when it gives officers the tool to do their job safely.

Plaintiffs argue (at 54) that other courts have recognized a First Amendment "right to be as close as a few feet away." That is incorrect. In *Glik v. Cunniffe*, 655 F.3d 78 (1st Cir. 2011), a bystander happened to be filming offers from "roughly ten feet away" when the officers stopped him from filming at all. *Id.* at 80. But the First Circuit did not hold that reporters have an unqualified right to record at whatever distance they see fit. It merely described the asserted right to record as a right to record "in a public space" where recording "does not interfere with the police officers' performance of their duties." *Id.* at 84. Nor did the unreported opinion in *Perkins v. Hart*, 2023 WL 8274477 (5th Cir. Nov. 30, 2023), hold that citizens have a right to record police at whatever distance they desire. The court denied summary judgment

to police who handcuffed someone who was recording them but "was not too close" to the arrest scene and "did not impede the Deputies' ability to perform their duties." *Id.* at *7. Neither decision thus holds that reporters invariably have a right to come within 25 feet of police. Plaintiffs have no evidence that the Buffer Law's allegedly unconstitutional applications are substantially greater than its constitutional ones.

*Bell* does not help Plaintiffs either. Plaintiffs construe *Bell* as holding that a statute is facially overbroad if it allows a dispersal order to be "issued 'to individuals exercising protected First Amendment rights' without any showing that an order was in fact 'necessary.'" Resp Br. 60 (quoting *Bell*, 697 F.3d at 459). But the passage that Plaintiffs quote merely explains the basis for the Court's conclusion that the challenged ordinance—which permitted police to order persons to dispense whenever three persons in the vicinity are likely to cause "serious inconvenience"—"impacts speech." *Bell*, 697 F.3d at 459. The Court elsewhere made clear that a law can be declared overbroad on its face only if the overbreadth is "*substantial[].*" *Id.* at 457. And as the Supreme Court has recently reminded federal courts, that overbreadth analysis cannot be done in the abstract. *See Moody*, 603 U.S. at 723–24. The mere fact that there might be "potentially problematic applications" of a statute does not render it unconstitutionally overbroad. *Thayer*, 110 F.4th at 1043.

Nor does *Brown v. Kemp*, 86 F.4th 745 (7th Cir. 2023), establish that any "restriction on 'approaching' officers triggers First Amendment scrutiny." Resp. Br. 62. That decision concerned a Wisconsin law that barred (among other things) "approaching" a person for the "purpose" of impeding or obstructing lawful hunting.

*Brown*, 86 F.4th at 757. But the Court did not conclude the statute was overbroad merely because it prohibited approaching hunters in some situations. Rather, the Court held that the statute was facially overbroad for two reasons: (1) the statute's only effect was to "outlaw photography, videography, audiotaping, or other monitoring or recording activities that *do not physically interfere* with hunting activities," and (2) Wisconsin could identify a single, "improbable" application of the statute that was constitutional. *Id.* at 777–78. In contrast, the Buffer Law applies to far more conduct that people approaching to engage in peaceful, nonobstructive recording. Plaintiffs cannot show that the Buffer Law is substantially overbroad.

## B. To the extent that the Buffer Law implicates the First Amendment, it is a valid content-neutral regulation

Plaintiffs alternatively argue that the Buffer Law violates the First Amendment "as applied" to "peaceful, nonobstructive newsgathering in public places." Resp. Br. 48. As an initial matter, that theory cannot sustain the current injunction. It prohibits *any* enforcement of the Buffer Law by Defendants—not merely its application to "peaceful, nonobstructive newsgathering in public places." SA2–SA3.[1] Nor is it clear what is encompassed within Plaintiffs' "as applied" challenge. Their brief does not explain what constitutes "peaceful, nonobstructive

_____

[1] More generally, the Court should be wary of affirming a preliminary injunction on grounds the district court did not address. "A preliminary injunction is an exercise of discretion and judgment" by the district court that is "often dependent as much on the equities of a given case as the substance of the legal issues it presents." *Trump v. Int'l Refugee Assistance Project*, 582 U.S. 571, 579 (2017) (citation omitted). So even if there is some likelihood that a plaintiff might succeed on some other theory, it would not follow that the plaintiff is entitled to injunctive relief.

newsgathering" or explain how a court tasked with writing an injunction that complies with Federal Rule of Civil Procedure 65 could describe with the requisite specificity which newsgathering activities are (and are not) peaceful and nonobstructive. The ambiguity inherent in Plaintiffs' claim means that it is not a proper as-applied challenge or, at the very least, demonstrates that any as-applied challenge is not yet ripe. *See Triple G Landfills*, 977 F.2d at 288–89 (courts must "avoid the premature adjudication of cases when the issues posed are not fully formed, or when the nature and extent of the statute's application are not certain").

Even if one construes Plaintiffs' claim as an argument that the Buffer Law cannot be applied to reporters engaged in certain newsgathering activities, their challenge fails. Statutes like the Buffer Law that regulate conduct with both "speech" and "nonspeech" elements are subject to the standard in *United States v. O'Brien*, 391 U.S. 367, 376 (1968). Under that standard, a law is permissible when it "furthers an important or substantial governmental interest; if the government interest is unrelated to the suppression of free expression, and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest." *Id.* And even if the statute is treated as regulating speech, it would at most be subject to the standard for time, place, and manner restrictions. To determine whether such a restriction is reasonable, courts ask whether the challenged restriction "(1) is content neutral; (2) serves a significant government interest; (3) is narrowly tailored to promote that interest; and (4) leaves open ample

alternative channels of communication." *Knowlton v. City of Wauwatosa*, 119 F.4th 507, 515 (7th Cir. 2024). Whatever the standard, the Buffer Law meets it.

First, the law is content neutral because it makes no reference to the content of an individual's speech. Indeed, it is not triggered by speech, but by *conduct*—approaching within 25 feet of a law enforcement officer after being ordered to stop approaching. Nonetheless, Plaintiffs argue the law is "content based" because its putative purpose is shielding officers from criticism. Resp. Br. 50. Ordinarily, however, courts do not determine whether a restriction is content based by hazardous inquiries into legislative motives. *See O'Brien*, 391 U.S. at 383–84. They ask whether the law "applies to particular speech because of the topic discussed or the idea or message expressed." *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015). Here, a person does not violate the law by speaking about a topic or viewpoint, but by approaching after being ordered to stop. Thus, the Buffer Law is "agnostic as to content." *City of Austin v. Reagan Nat'l Advertising of Austin*, 596 U.S. 61, 69 (2022).

Besides, it is pure speculation to say that the law exists only to shield officers from critics. As the text exhibits, the law's evident purpose is protecting officers' undivided attention. *See* Opening Br. 28–29. The statute does not require onlookers to "leave the area." It merely requires them to approach no closer than 25 feet—a distance from which they can still "easily" capture police on camera. *Nicodemus*, 711 F. Supp. 3d at 1026; *contrast Brown*, 86 F.4th at 773 (noting the challenged statute might be construed to prohibit approaching within 500 yards). That another statute prohibits knowing or intentional "interfere[nce]" with an officer does not imply the

Buffer Law's exists only to suppress speech. Ind. Code § 35-44.1-3-1(a)(1); *contra* Resp. Br. 50. There are many situations in which an onlooker's presence within 25 feet can divide an officer's attention even if onlookers are not going so far as to "interfere" with an officer's execution of her duties. For example, if an officer is responding to someone having a violent mental-health crisis, she may reasonably ask onlookers not to approach closer than 25 feet so that her attention may be focused on the person in crisis, not on directing traffic or scanning for potential threats.

Nor is the law content-based merely because it gives officers discretion. *Contra* Resp. Br. 49. Although the Supreme Court and this Court have held that statutes giving "unbridled discretion" to officials charged with issuing permits for protests and other speech activities can be content-based, *Smith v. Exec. Dir. of Ind. War Memorial's Comm'n*, 742 F.3d 282, 289–90 (7th Cir. 2014), Plaintiffs cite no case extending that principle outside the permitting context, *cf. Forsyth Cnty. v. Nationalist Mvmt.*, 505 U.S. 123, 133 n.10 (1992) (applying specifically to permitting decisions). And besides, the officials in the permitting cases had almost limitless discretion, including discretion over whether to require a permit, whether to charge a fee, and whether to require insurance. *See Smith*, 742 F.3d at 289–90. Here, officers may only tell someone to stop approaching when the officer is engaged in his official duties and may only tell a person not to approach closer than 25 feet.

Second, the law serves an important government interest unrelated to suppressing free expression. As discussed above, it ensures that officers may conduct their official duties without approaching bystanders diverting officers' attention.

There can be no doubt that protecting officers and making them more effective are important interests. *See United States v. Bonin*, 932 F.3d 523, 535 (7th Cir. 2019) (concluding that "public safety" is a compelling interest); *Alvarez*, 679 F.3d at 607 ("police may take all reasonable steps to maintain safety and control, secure crime scenes and accident sites, and protect the integrity and confidentiality of investigations"); *Brown v. Battle Creek Police Dept.*, 844 F.3d 556, 568 (6th Cir. 2016) (explaining that "insuring officer safety" is a "particularly important governmental interest[] that the courts must strive to protect"). And that interest is unrelated to the content of speech. Whatever a speaker's message may be, a speaker who comes right up behind an officer who needs undivided attention diverts the officer's mind.

Plaintiffs argue (at 57) that Indiana's law cannot protect police because few States have yet adopted its approach. But it should go without saying that "it is one of the happy incidents of the federal system that a single courageous State may, if its citizens choose, serve as a laboratory; and try novel social and economic experiments without risk to the rest of the country." *Ariz. State Leg. v. Ariz. Indep. Redistricting Comm'n*, 576 U.S. 787, 817 (2015) (quotation omitted). Indiana's law is a feature, not a bug, of the federalist system. A one-off plurality opinion discussing a fact-specific holding comparing election donation limits, Resp. Br. 57 (citing *Randall v. Sorrell*, 548 U.S. 230, 253 (2006)), does not change this bedrock principle. And as officers have testified, an officer "cannot know the intentions of the people encroaching on to the investigation," and so officers "need to be able to control access to the scene for their own safety, as well as the safety of the public." Dkt. 34-1 ¶¶ 5–6 (Perrine Decl.).

Third, the law is narrowly tailored to protect the State's interests. It gives officers space to work undistracted, but only allows officers to prevent bystanders from coming nearer than the width of "a common two-car garage," *Nicodemus*, 711 F. Supp. 3d at 1025, and ensures that bystanders will receive warning before being exposed to arrest. Citing cases dealing with the use of deadly force, Plaintiffs respond that officers are not justified in treating everyone who comes closer than 25 feet as a threat to their safety. *See* Resp. Br. 53–56. But their criticism confuses the issue. The Buffer Law is designed to give officers the space they need to operate without having their attention diverted by close-coming crowds. It says nothing about permissible uses of force. What Plaintiffs fail to address is evidence that officers "cannot know the intentions of the people encroaching on to the investigation," and that they "need to be able to control access to the scene for their own safety, as well as the safety of the public." Dkt. 34-1 ¶¶ 5–6 (Perrine Decl.). Without some way to prevent people, particularly crowds of people, from approaching, officers must "divide their attention between securing the scene and the safety of the bystanders." *Id.*

Finally, the law leaves open ample alternative means to participate in First Amendment activities. Plaintiffs cannot dispute that, "[i]n this day and age of enhanced technology, with zoom lenses that allow individuals to capture activity at hundreds of feet, or parabolic microphones that allow audio recording at distances will in excess of 25 feet, and with the ever-increasing capabilities of cellphones, drones, and common devices," a 25-foot buffer does not "substantial[ly] burden" anyone's "ability to record meaningfully." *Nicodemus*, 711 F. Supp. 3d at 1025.

Indeed, Plaintiffs ignore that the very videos they assert are essential are "almost certainly" taken from a distance of at least 25 feet. Opening Br. 29–30.

Plaintiffs argue (at 53) that the law must fail the "ample alternative means" test because they can conceive of a more narrow statute. But the Supreme Court long ago rejected this argument. Rather, it held that a "regulation will not be invalid simply because a court concludes that the government's interest could be adequately served by some less-speech-restrictive alternative." *Ward v. Rock Against Racism*, 491 U.S. 781, 800 (1989). That test is "quite broad[]." *Stokes v. City of Madison*, 930 F.2d 1163, 1170 (7th Cir. 1991). Plaintiffs cannot succeed on the argument that "they believe there are less speech-infringing possibilities" because "this, of course, is not the correct inquiry." *Matney v. Cnty. of Kenosha*, 86 F.3d 692, 697 (7th Cir. 1996). Besides, Plaintiffs' general assertion that they try to "get as close as I can" to events, Resp. Br. 58–59 (citing Supp.App.2), does not mean that they are unable to record, observe, or otherwise conduct "newsgathering."

Plaintiffs might *want* to be closer to officers than 25 feet. Resp. Br. at 58–59. But even if Plaintiffs' asserted right to newsgathering encompassed a right to be closer than 25 feet, an "adequate alternative does not have to be the speaker's first or best choice, or one that provides the same audience or impact for the speech." *Gresham v. Peterson*, 225 F.3d 899, 906 (7th Cir. 2000). It therefore does not violate the First Amendment if the Buffer Law means that reporters capture mid-quality instead of "high-quality sound and video," Supp.App.2, or reporters must tolerate

some "background noise," Supp.App.10, or reporters must stand 5 to 10 feet further away than they prefer, Supp.App.2. Indiana's law survives any level of scrutiny.

Of course, the result "might be different if an officer enforces this law unconstitutionally in a particular scenario." *Nicodemus*, 711 F. Supp. 3d at 1028. But there is no such scenario for this Court to examine here. Although Plaintiffs might label their challenge an "as applied" challenge, their challenge extends beyond any particular factual scenario to any newsgathering activities conducted "within 25 feet of law enforcement officers performing their duties in public spaces." Dkt. 1 ¶ 64–66. That renders Plaintiffs' challenge a facial challenge to the law, and therefore they must meet the standards for a facial challenge rather than hypothesizing about potential misuses of the law. *See John Doe No. 1 v. Reed*, 561 U.S. 186, 194 (2010). And even if reporters were told not to approach within 25 feet in a specific instance, they have not shown that reporters would be precluded from newsgathering. Professional reporters are not less able than laypersons to use the "cellphones, drones, and common devices ubiquitously found in the hands of most every citizen." *Nicodemus*, 711 F. Supp. 3d at 1025.

At bottom, Plaintiffs' "as applied" challenge depends on their assumption that they have a First Amendment right to come "as close as a few feet." Resp. Br. 54. But no authority establishes that reporters or citizens have an "unrestrained right to gather information." *John K. MacIver Inst.*, 994 F.3d at 612. And Plaintiffs cite no authority establishing that whatever right exists includes a right to get as close as one wants or to record without "background noise." Supp.App.10. Indeed, Plaintiffs

do not even attempt to explain the contours of their purported "newsgathering" right. Does it protect their ability to be "a few feet" from law enforcement? Supp.App.14. Five to ten feet? Supp.App.10. Fifteen to 20 feet? Supp.App.2. Under what circumstances? And does the right guarantee a particular level of video or audio quality? Does it guarantee a particular camera angle? These are precisely the sorts of questions better explored in the context of cases involving challenges to particular applications of the statute than in an abstract pre-enforcement challenge.

## CONCLUSION

The preliminary injunction should be vacated, and this Court should reverse the district court's denial of the State's motion to dismiss.

Respectfully submitted,

THEODORE E. ROKITA
Attorney General of Indiana

/s/ James A. Barta

JOHN P. LOWREY                                   JAMES A. BARTA
Deputy Chief Litigation Counsel                  Solicitor General
City of Indianapolis
Office of Corporation Counsel                     JENNA M. LORENCE
200 E. Washington Street, Suite 1601              Deputy Solicitor General
Indianapolis, Indiana 46204
Telephone: (317) 327-4055                         JOHN M. VASTAG
Email: john.lowrey@indy.gov                       Deputy Attorney General

*Counsel for Defendant-Appellant*                Office of the Attorney General
*Kerry Forestal*                                  IGC South, Fifth Floor
                                                  302 W. Washington Street
                                                  Indianapolis, IN 46204
                                                  (317) 232-0709
                                                  James.Barta@atg.in.gov

                                                  *Counsel for Defendants-Appellants*
                                                  *Todd Rokita and Ryan Mears*

# CERTIFICATE OF COMPLIANCE

1.      This document complies with the type-volume limitation of Circuit Rule 32(c) because this document contains 6,725 words, excluding the parts exempted by Fed. R. App. P. 32(f).

2.      This document complies with the typeface requirements of Circuit Rule 32(b) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in Century Schoolbook 12-point font.

March 5, 2025                         <u>/s/ James A. Barta</u>
                                              James A. Barta

**CERTIFICATE OF SERVICE**

I hereby certify that on March 5, 2025, I electronically filed the foregoing document with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

March 5, 2025                                    /s/ James A. Barta
                                                James A. Barta